UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DIST. COURT
SAVANNAH DIV.

2001 JUN 28 P 3: 15

゜:゜ ̄DIST. OF GA.

FREDERICK GORHAM, )
)
Petitioner, )
)
vs. )   No. CV 400-276
)   [Underlying CR497-181]
UNITED STATES OF AMERICA, )
)
Respondent. )

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO GORHAM'S MOTION PURSUANT TO 28 U.S.C. §2255

COMES NOW the United States of America, by and through Edmund A. Booth, Jr.,

United States Attorney for the Southern District of Georgia, and supplements its December 1,

2000, response to Frederick Gorham's motion pursuant to 28 U.S.C. §2255. At page 4 of its

response, the government asserts that issues 1, 2, and 7 of Gorham's section 2255 motion were

rejected on direct appeal. In support of the government's assertion, it now attaches Gorham's

brief on direct appeal, the government's responsive brief, and the Eleventh Circuit's order as

Exhibits A, B, and C, respectively.

Respectfully submitted this 28th day of June, 2001.

EDMUND A. BOOTH, JR.
UNITED STATES ATTORNEY

Carlton R. Bourne, Jr.
South Carolina Bar No. 007868
Assistant United States Attorney

1

22

U. S. Attorney's Office
100 Bull Street, Suite 201
Savannah, GA 31401
(912) 652-4422

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

NUMBER 98-8154

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK GORHAM,

Defendant-Appellant

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

---

BRIEF OF THE APPELLANT

---

William O. Cox
Attorney for Appellant
Georgia Bar Number 192681

123 East Liberty Street
Savannah GA 31401
Business (912) 233-3804
Facsimile (912) 233-3805


GOVERNMENT EXHIBIT
A

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel for Frederick Gorham certifies hereby that a complete list of entities and persons interested in the outcome of this case follows below:

Kathryn M. Aldridge, Esquire, Assistant United States Attorney

Carlton R. Bourne, Jr., Esquire, Assistant United States Attorney

Harry D. Dixon, Jr., United States Attorney

Honorable B. Avant Edenfield, Judge, United States District Court

Frederick Gorham

Joyce Griggs, Counsel for Keith Coleman

Richard A. Long, United States Probation Officer

Teddy Soloman, Counsel for Keith London

21 December 1998.

William O. Cox
Attorney for Appellant
Georgia Bar Number 192681

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested by appellant. All factual questions may be resolved by reference to the record.

## STATEMENT REGARDING TYPE STYLE AND SIZE

The type style and size in this brief is Courier 12 point.

## RECORD REFERENCES

| | | |
|---|---|---|
| R1 | = | Record Volume 1: Clerk's Pleadings and Documents File. |
| R2 | = | Record Volume 2: 11-07-97 Pretrial Hearing. |
| R3 | = | Record Volume 3: 11-19-97 Trial Transcript Volume I. |
| R4 | = | Record Volume 4: 11-20-97 Trial Transcript Volume II. |
| R5 | = | Record Volume 5: 11-21-97 Trial Transcript Volume III. |
| R6 | = | Record Volume 6: 01-28-98 Sentencing Transcript. |
| PSI | = | Presentence Investigation Reports with Addenda. |

## TABLE OF CONTENTS

Certificate of Interested Persons.......................C1 of 1

Statement Regarding Oral Argument..............................i

Statement Regarding Type Style and Size........................i

Record References..............................................i

Table of Contents.............................................ii

Table of Authorities.........................................iii

Statement of Jurisdiction.....................................v

Issues Presented.............................................vi

Statement of the Case.........................................1

Statement of the Facts........................................2

Standards of Review...........................................5

Summary of the Arguments......................................6

Argument I....................................................7

Argument II..................................................10

Argument III.................................................12

Argument IV..................................................14

Conclusion...................................................15

Certificate of Service.........................................

# TABLE OF AUTHORITIES

**STATUTES**                                                              Page No.

18 U.S.C. § 921                                                          1

21 U.S.C. § 846                                                          1

21 U.S.C. § 846. 18 U.S.C. § 3231 and F.R.C.P. P. 18                     iv

28 U.S.C. §§ 41,1291, and 1294 (1)                                      iv

U.S.S.G. § 2D1.1                                                         6, 10

U.S.S.G. § 2 D1.1. (b)(6)                                               6, 10

U.S.S.G. § 5C1.2                                                         6, 10

U.S.S.G. § 5C1.2 (1)                                                    10

U.S.S.G. § 5C1.2 (2)                                                    10

U.S.S.G. § 5C1.2 (3)                                                    11

U.S.S.G. § 5C1.2 (4)                                                    11

U.S.S.G. § 5C1.2 (5)                                                    11

U.S.S.G. §5C1.2 (1) - (5)                                              10

**Cases**

United States v. Andrews                                                 9
    953 F.2d 1312,1319 (11th Cir., 1992)

United States v. Lively                                                  9
    803 F.2d 1124,1126 (1                  1[th] Cir., 1986)

United States v. Freyre-Lazaro                                           9
    3 F.3d 1496 (11th Cir., 1993)

United States v. Richardson                                              9
    764 F.2d 1514, 1529 (11th Cir.)

United States v. Robinson                                                5, 9
    935 F.2d 201, 201 (11th Cir., 1991)

iii

<u>United States v. Tokars</u>                                     8, 9

     95 F.3d 1520 (11th Cir., 1996)

<u>United States v. Yates</u>                                        5

     990 F.2d 1179, 1182 (11th Cir., 1993)

<u>United States v. Young</u>                                        5

     39 F.3d 1561, 1568 (11th Cir., 1994)

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

NUMBER 98-8154

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK GORHAM,

Defendant-Appellant

---

## STATEMENT OF JURISDICTION

The Appellant makes a direct appeal from the final judgments
of a United States District Court in a criminal case. 28 U.S.C.§§
41, 1291, and 1294(1) provide this Court with jurisdiction to
hear the appeal.

The Appellant was prosecuted in the United States District
Court for violations of 21 U.S.C. 846. 18 U.S.C. §3231 and
F.R.C.P. P.18 placed venue in the United States District Court,
Southern District of Georgia.

## ISSUES PRESENTED FOR REVIEW

I.   WHETHER the computation of the Base Offense Level of 32 based upon the 4.7 kilograms of cocaine used twice in the two scenarios is erroneous.

II.  WHETHER under the Sentencing Guidelines Base Level Offense provision §2D1.1. (b) (6), the Appellant meets the criteria set forth in §5C1.1 (1) - (5), and should have received a two level decrease in base offense level.

III. WHETHER the Appellant was selectively prosecuted by the FBI and the U.S. Attorney's office and convicted based upon the selective prosecution.

IV.  WHETHER the Court erred under Rule 24(1) in using a lottery method to select the alternate jurors.

# STATEMENT OF THE CASE

## I.   District Court Course Proceedings and Disposition

Frederick K. Gorham appeals from the judgment in a criminal
case entered in the United States District Court for the Southern
District of Georgia on 28 January 1998. R1-239-37. The Appellant
was found guilty on the following three counts after a plea of
not guilty: Count 1, Conspiracy to aid and abet the distribution
of cocaine, in violation of 21 U.S.C. § 846; Count 5, Attempt to
aid and abet the distribution of cocaine, in violation of 21
U.S.C. § 846; and Count 6, Attempt to aid and abet the
distribution of cocaine, in violation of 21 U.S.C. § 846. R1-237-
37. Appellant was sentenced to two hundred and thirty-five (235)
months of imprisonment on each count, to be served concurrently,
and five (5) years of supervised release on each count, to be
served concurrently. R1-237-37. The Court ordered that the
Defendant shall not possess a firearm as defined in 18 U.S.C. §
921, and the Court ordered that the Defendant shall participate
in a program of testing and treatment for drug and alcohol abuse,
as directed by the probation officer, until such time as the
defendant is released from the program by the Court. R1-237-37.
Additionally, the Court ordered that the Defendant pay a special
assessment of three hundred ($300.00) dollars due immediately,
and the Court denied the Defendant all federal benefits for a
period of five (5) years. R1-237-37.

## II. Statement of the Facts

In November, 1995, the Federal Bureau of Investigation (FBI) initiated an undercover operation to investigate complaints of police corruption made in 1993 and 1994. PSI 4 (paragraph 4). The FBI used a convicted felon as a cooperating witness (hereinafter referred to as CW), and an undercover FBI agent, identified as Tony in the operation. PSI 4-5 (paragraphs 4,5). In November, 1995, CW recruited Savannah Police Department Officer Thomas Bryant to escort and protect unspecified amounts of cocaine hydrochloride which were to be transported through Savannah, Georgia. PSI 4 (paragraph 4).

Officer Bryant recruited subsequently, for the same purpose, four fellow Savannah Police Officers: William Banks, Christopher Alexander, Anthony Bryant, and Keith Coleman. PSI 4 (paragraph 4). Between 6 December 1995 and 20 September 1996, The FBI initiated twelve scenarios in which the above named police officers participated individually and/or jointly. PSI 4 (paragraph 5).

On 31 October 1996, Officer Keith Coleman proposed to CW and Tony that Officer Coleman recruit additional police officers to participate in the escort services. PSI 5 (paragraph 8). Officer Coleman recruited **Frederick Gorham** and Keith London to participate in the escort service. PSI 5 (paragraph 8). On 18 November 1996, Coleman, Gorham, and London met with CW. PSI 5. CW stated that he was transporting cocaine through Savannah, and

2

that Gorham and London would be providing escort and security services. PSI 5 (paragraph 8).

Officer Keith Coleman negotiated the amount of money the police officers were to be paid, and Coleman always received the entire payment for all the officers himself. PSI 5 (paragraph 9). Coleman never allowed CW or Tony to pay the other officers involved directly. PSI 5 (paragraph 9). Instead, Coleman paid the other officers less than the amount he negotiated on their behalf, and kept the remainder himself. PSI 5 (paragraph 9).

Appellant Gorham participated in two scenarios which occurred on 20 November 1996 and 10 December 1996 respectively. PSI 5-6 (paragraphs 10,11).

During the scenario on 20 November 1996, Gorham and London were dispatched by Officer Coleman from the parking lot of the Savannah Marriott Hotel to Dean Forest Road to escort a courier back to the Savannah Marriott Hotel. PSI 6 (paragraph 10). Following a transaction involving 4.7 kilograms of FBI cocaine and payment for escort services to Officer Coleman, which both took place outside of the Appellant Gorham's presence, Gorham and London escorted the courier from the Savannah Marriott Hotel parking lot to Interstate 95. PSI 6 (paragraph 10). Officer Coleman received three thousand ($3,000.00) dollars on behalf of Appellant Gorham. PSI 6 (paragraph 10). Appellant Gorham received only two thousand ($2,000.00) dollars from Officer Coleman. R6-11 (lines 24-25).

During the scenario on 10 December 1996, Keith Coleman,

3

Keith London, and Appellant Gorham escorted undercover FBI agent Tony to the Savannah International Airport ostensibly to retrieve an undisclosed amount of cash. PSI 6 (paragraph 11). The three officers escorted Tony to CW's undercover apartment. PSI 6 (paragraph 11). The officers then escorted CW an undercover warehouse with the undisclosed amount of cash. PSI 6 (paragraph 11). Appellant Gorham and London drove to the Dean Forest Road Speedway Convenience Store and escorted an undercover FBI agent, who was in possession of the same 4.7 kilograms of FBI cocaine used in the 20 November 1996 scenario, to the undercover warehouse. PSI 6 (paragraph 11). Coleman, London, and the Appellant escorted CW from the undercover warehouse to an Interstate 95 rest stop where a fictitious drug transaction took place. PSI 6 (paragraph 11). CW paid Officer Coleman three thousand five hundred ($3,500.00) dollars on behalf of Appellant Gorham. PSI 6 (paragraph 11). Coleman paid Gorham one thousand ($1,000.00) dollars of this money. PSI Addendum (objection 1). R6-11 (lines 24-25).

Appellant participated solely in the two aforementioned scenarios. On 3 January 1997, the Savannah Police Department terminated Appellant Gorham for unsatisfactory service. PSI 7 (paragraph 14). PSI 11-12 (paragraph 43). Gorham received a total of three thousand ($3,000.00) dollars of the six thousand five hundred ($6,500.00) dollars paid to Officer Coleman on Gorham's behalf. PSI 8 (paragraph 18). R6-11 (lines 24-25). PSI Addendum (objection 1).

4

ARGUMENT I

**The computation of the Base Offense Level of 32 based upon the 4.7 kilograms of cocaine used twice in the two scenarios is erroneous.**

The district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes is a factual question subject to the clearly erroneous standard. <u>United States v. Robinson</u>, 935 F.2d 201, 205 (11th Cir. 1991).

ARGUMENT II

**Under the Sentencing Guidelines Base Level Offense provision §2D1.1.(b)(6), the Appellant meets the criteria set forth in §5C1.1 (1)-(5), and should have received a two level decrease in base offense level.**

The Government bears the burden of proving the defendant's role by a preponderance of the evidence. <u>United States v. Yates</u>, 990 F.2d 1179, 1182 (11th Cir. 1993). The district court's findings are reviewed for plain error. <u>United States v. Young</u>, 39 F.3d 1561, 1568 (11th Cir. 1994).

5

# SUMMARY OF THE ARGUMENTS

## ARGUMENT I

Without any evidence by the Government regarding the Appellant's ability to foresee the amount of cocaine being escorted, the Government's contention that 9.4 kilograms of cocaine would be the "minimum amount foreseeable" to the Appellant is strictly arbitrary. PSI Addendum (objection 1, probation officer's response, paragraph 1). The attribution of 9.4 kilograms of cocaine violates the Appellant's right of Due Process as contemplated by U.S. Constitution Amendments Five and Fourteen, because the Appellant had no knowledge of the quantity of cocaine, and because there is no evidence the Appellant had any method to extrapolate what the quantity of cocaine might have been.

## ARGUMENT II

The Appellant was sentenced according to the provisions of U.S.S.G. §2D1.1., which provides for a two level decrease in base offense level under U.S.S.G. §2D1.1.(b)(6) for defendants meeting the criteria set forth in §5C1.2, when the offense level is greater than 26. U.S.S.G. §§2D1.1.(b)(6). PSI-8 (paragraph 23). The Appellant meets the criteria as it is outlined in U.S.S.G. §5C1.2, and therefore his offense level should be decreased two levels.

6

## ARGUMENT I

**The computation of the Base Offense Level of 32 based upon the 4.7 kilograms of cocaine used twice in the two scenarios is erroneous.**

The Probation Officer contends that Appellant Gorham could have foreseen easily that the two scenarios involved a total of 9.4 kilograms of cocaine, based upon an extrapolation from the fact that Appellant Gorham received two thousand ($2,000.00) dollars on 20 November 1996 and one thousand ($1,000.00) dollars on 10 December 1996. PSI Addendum (objection 1, probation officer's response paragraph 1).

The F.B.I. agents who were involved with the sting operation used the same 4.7 kilograms of cocaine for both scenarios in which Appellant Gorham participated. PSI Addendum (objection 1: Probation Officer's Response, paragraph 2). Neither F.B.I. agents nor anyone else participating in the operation discussed, disclosed, exhibited, or otherwise provided any information regarding the amount of cocaine to Appellant Gorham. PSI Addendum (objection 1).

In view of the Appellant's complete ignorance of the amount of cocaine the Government was transporting, the Government's election to use 4.7 kilograms of cocaine was neither actually known nor foreseeable to the Appellant. PSI Addendum (objection 1).

There is no evidence that Appellant Gorham were able to

7

extrapolate and measure the drug amount based on his salary multiplied by three times, as the Probation Officer contends. PSI Addendum (objection 1, probation officer's response, paragraph 1). Such a calculation would require detailed knowledge of the cocaine trade, and there is no evidence that Appellant Gorham knew the value or weight of cocaine hydrochloride.

The attribution of 9.4 kilograms of cocaine violates the Appellant's right of Due Process as contemplated by *U.S.* Constitution Amendments Five and Fourteen, because the Appellant had no knowledge of the quantity of cocaine, and because there is no evidence the Appellant had a method to extrapolate what the quantity of cocaine might have been. <u>United States v. Tokars</u>, 95 F.3d 1520 (11th Cir., 1996).

Finally, without any evidence by the Government regarding the Appellant's ability to foresee the amount of cocaine being escorted, the Government's contention that 9.4 kilograms of cocaine would be the "minimum amount foreseeable" to the Appellant is strictly arbitrary. PSI Addendum (objection 1, probation officer's response, paragraph 1).

It is dubious that the Probation Officer's choice of 9.4 kilograms as the <u>minimum amount foreseeable</u> to the Appellant <u>matches exactly</u> the 4.7 kilograms multiplied twice used in the reverse sting operation. PSI Addendum (objection 1, probation officer's response, paragraph 1). Without any evidence substantiating the assertion that the amount in question was the minimum foreseeable by the Appellant, it is clearly erroneous to

8

attribute 9.4 kilograms to this Appellant. <u>U.S. v. Freyre-Lazaro</u>, 3 F.3d 1496 (11th Cir. 1993). <u>U.S. v. Robinson</u>, 935 F.2d 201, 205 (11th Cir. 1991). <u>U.S. v. Andrews</u>, 953 F.2d 1312 1319 (11th Cir. 1992).

In the context of the facts of this case, the level should be based on the amount of money paid to the Appellant. <u>U.S. v. Tokars</u>, 95 F.3d 1520 (11th Cir. 1996). An aider and abettor application should not be applied where, as here, the only possession of drugs was strictly by the government. <u>U.S. v. Lively</u>, 803 F.2d 1124, 1126 (11th Cir. 1986), <u>U.S. v. Richardson</u>, 764 F.2d 1514, 1529 (11th Cir.).

Under the Sentencing Guidelines Base Level Offense provision §2D1.1.(b)(6), the Appellant meets the criteria set forth in §5C1.1 (1)-(5), and should have received a two level decrease in base offense level.

The appellant was sentenced according to the provisions of U.S.S.G. §2D1.1., which provides for a two level decrease in base offense level under U.S.S.G. §2D1.1.(b)(6) for defendants meeting the criteria set forth in §5C1.2, when the offense level is greater than 26. U.S.S.G. §§2D1.1.(b)(6). PSI-8 (paragraph 23).

U.S.S.G. §5C1.2 provides that the court shall impose a sentence in accordance with the applicable guidelines if the defendant meets the criteria of 18 U.S.C. §3553(f)(1)-(5), which are set forth verbatim in U.S.S.G. §5C1.2(1)-(5). U.S.S.G. §5C1.2.

U.S.S.G. §5C1.2(1) requires that "the defendant does not have more than 1 criminal history point." U.S.S.G. §5C1.2(1). Appellant had a total of zero criminal history points at the time he was sentenced. PSI-9 (paragraph 35).

U.S.S.G. §5C1.2(2) requires that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense" U.S.S.G. §5C1.2(2). Appellant used no violence and/or threats, and appellant did not possess a firearm or other dangerous weapon in connection with the offense. PSI 5-6 (paragraphs 8,10,11). PSI Addendum (objection 3, probation officer's response, paragraph

10

1).

U.S.S.G. §5C1.2(3) requires that "the offense did not result in death or serious bodily injury to any person." U.S.S.G. §5C1.2(3). Appellant's offense did not result in injury to any person. PSI-9 (paragraph 25).

U.S.S.G. §5C1.2(4) requires that "the defendant was not an organizer, leader, manager, or supervisor of others in the offense. U.S.S.G. §5C1.2(4). Appellant did not play any of the roles mentioned above. PSI-5 (paragraph 8).

U.S.S.G. §5C1.2(5) requires that not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct. . ., but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement. U.S.S.G. §5C1.2(5). Appellant admitted to the acts involved in the offense of conviction, but denied the requisite knowledge and intent, and under these circumstances, Appellant complied with the above requirement. PSI Addendum (objection 5, paragraph 1).

ARGUMENT ~~IV~~ III

The Appellant was selectively prosecuted by the FBI and the U.S. Attorney's office and convicted based upon the selective prosecution.

While it is acknowledged that the conscious exercise of some selectivity in the prosecution is not, in itself, a constitutional violation, such a prosecution based upon an unjustifiable standard is unconstitutional. See **Oyler v. Boles, 368 U.S. 488 (1962)**.

The prosecution of Appellant was selective and discriminatory and that said discrimination was intentional and purposeful on the part of law enforcement officials. The Appellant was targeted and selected because of his race. Only African American officers were the targets in Operation Broken Oath. Non-African American officers were involved in illegal activities but the FBI chose to ignore them and pursue African American officers. The trial court denied Appellant's motion to dismiss based upon selective prosecution. (R3-184).

The Appellant contends that the process by which his case was selected for criminal prosecution under code sections citd in the indictment denied him equal protection of the law, as guaranteed by the **Fifth and Fourteenth Amendments of the United States Constitution**. The discovery and facts in the case denote that officers that were involved in documented corrupt activities were not prosecuted for conduct similar to that which the Appellant was prosecuted. The Appellant was singled out for

12

prosecution on the basis of an arbitrary and invidious criterion: race. Government agents admitted that they knew several white officers who were involved in illegal activity and did not pursue prosecution of the white officers.

The trial judge in his order forewarned the Appellant's counsel; no one shall pull the "race card" at any phase of the forthcoming trial. He further ordered that no racism allegations shall be raised at any point during the trial, directly or indirectly. If counsel for Appellant violated the instructions, "punishment would be swift in coming and painful upon arrival." The trial judge's order placed a chilling effect on the course of the trial. Appellant believes that the issue here is are for the trier of fact to be submitted to the jury for determination once a foundational hearing is held.

In support of this motion defendant relies on <u>Yick Wo v. Hopkins</u>, 118 U.S. 356 (1886).


**The Court erred under Rule 24(1) in using a lottery method
to select the alternate jurors.**

"Federal Rules of Criminal 24(c) states that alternate
jurors in the order in which they are called shall replace
jurors, prior to the time that the jury retires to consider its
verdict, becomes or is found to be unable or disqualified to
perform their duties." <u>Peak v. Kemp</u>, 784 F.2d 1479 (11 Cir.,
1986); <u>Green v. Zant</u>, 715 F.2d 551 (11 Cir., 1985); Rule 24(c)
Fed. R. Crim. P.

In the instant case, the trial court failed to name the two
alternate jurors until the end of the trial.  The court chose
Anne-Marie Vickery and Wynelle Adams (R109, 7, 633).  Federal
Rule 24(c) provides that an alternate juror is only called when a
juror is unable to perform or is disqualified.  <u>Green v. Zant</u>,
*supra;* <u>Port Terminal and Warehousing v. John S. James Co.</u>, 695
F.2d 1328 (11 Cir., 1983).

## CONCLUSION

For the reasons set forth above, Appellant respectfully submits that the Court should vacate his sentence and the case be remanded for sentencing as requested above.

This 21st day of December, 1998,

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

NUMBER 98-8154

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK GORHAM,

Defendant-Appellant

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

---

BRIEF OF THE APPELLANT

---

William O. Cox
Attorney for Appellant
Georgia Bar Number 192681

123 East Liberty Street
Savannah GA 31401
Business (912) 233-3804
Facsimile (912) 233-3805

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

NO. 98-8154

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK GORHAM,

KEITH COLEMAN, and

KEITH LONDON,

Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

BRIEF OF THE APPELLEE

HARRY D. DIXON, JR.
UNITED STATES ATTORNEY

Carlton R. Bourne, Jr.
Assistant United States Attorney
Post Office Box 8999
Savannah, GA   31412

January 19, 1999                  Attorney for the Plaintiff



## CERTIFICATE OF INTERESTED PERSONS

Now comes Harry D. Dixon, Jr., United States Attorney for the Southern District of Georgia, by and through Carlton R. Bourne, Jr. and certifies that, to the best of his information and belief, the following is a complete list of interested persons as set forth in Rule 28-2(b) of the Rules of United States Court of Appeals for the Eleventh Circuit:

Kathryn M. Aldridge

Carlton R. Bourne, Jr.

Keith Coleman

William O. Cox

Harry D. Dixon, Jr.

Hon. B. Avant Edenfield

Randolph Frails

Frederick Gorham

Joyce Griggs

Harry B. James, III

Keith London

Hon. G. R. Smith

Theodore Solomon

This 19th day of January, 1999.

Carlton R. Bourne, Jr.
Assistant United States Attorney
SC Bar No. 007868

c-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The issues are not complex, and are thoroughly covered in the briefs. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT REGARDING TYPE STYLE AND SIZE

The type style and size used in this brief is Courier 12 point.

# RECORD REFERENCES

The record volumes pertinent to this appeal are:

R1  = Record Volume 1  = clerk's pleadings & documents (1-86)

R2  = Record Volume 2  = clerk's pleadings & documents (87-169)

R3  = Record Volume 3  = clerk's pleadings & documents (170-end)

R4  = Record Volume 4  = 9-10-97 initial appearance transcript

R5  = Record Volume 5  = 11-5-97 motions hearing transcript (1)

R6  = Record Volume 6  = 11-6-97 motions hearing transcript (2)

R7  = Record Volume 7  = 11-19-97 trial transcript (Vol. 1)

R8  = Record Volume 8  = 11-20-97 trial transcript (Vol. 2)

R9  = Record Volume 9  = 11-21-97 trial transcript (Vol. 3 a.m.)

R10 = Record Volume 10 = 11-21-97 trial transcript (Vol. 3 p.m.)

R11 = Record Volume 11 = 1-28-98 sentencing transcript (Gorham)

R12 = Record Volume 12 = 1-28-98 sentencing transcript (Coleman)

SR1 = Supplemental Record Volume I= 1-28-98 sentencing transcript
      (London)

PSI = Presentence Investigation Reports with Addenda

References to the record used in this brief are made by
reference to the volume number, document number, and page number,
as follows:

| R | 3 | 49 | 19 |
|---|---|----|----|
| Record References | volume # | document # | page # |

References to the PSIs are identified with the defendant's
initials and the paragraph number as follows:

```
Keith Coleman   KC PSI #
Frederick Gorham   FG PSI #
Keith London   KL PSI #
```

The sentencing transcript for each defendant is referenced
with their initials as above.

# TABLE OF CONTENTS

Page(s)

Certificate of Interested Persons . . . . . . . . . . .c-1 of 1

Statement Regarding Oral Argument . . . . . . . . . . . . . . i

Statement Regarding Type Style and Size . . . . . . . . . . . i

Record References . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . iii

List of Authorities . . . . . . . . . . . . . . . . . . . . iv

Statement of Jurisdiction . . . . . . . . . . . . . . . . . x

Statement of the Issues . . . . . . . . . . . . . . . . . . xi

Statement of the Case . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts . . . . . . . . . . . . . . . . . . 3

Standards of Review . . . . . . . . . . . . . . . . . . . 12

Summary of the Arguments . . . . . . . . . . . . . . . . . 15

Argument I - Jurisdiction . . . . . . . . . . . . . . . . . 16

Argument II - Validity of Indictment . . . . . . . . . . . 17

Argument III - Trial Judge's Alleged Errors . . . . . . . . 18

Argument IV - Selective Prosecution . . . . . . . . . . . . 24

Argument V - Entrapment . . . . . . . . . . . . . . . . . . 29

Argument VI - Sufficiency of the Evidence . . . . . . . . . 30

Argument VII - New Trial Motion . . . . . . . . . . . . . . 34

Argument VIII - Sentencing Errors . . . . . . . . . . . . . 36

Argument IX - Ineffective Assistance . . . . . . . . . . . 45

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . 46

Certificate of Service . . . . . . . . . . . . . . . . . . 47

# TABLE OF AUTHORITIES

CASES                                                    Page(s)

Bolling v. Sharpe, 347 U.S. 497 (1954) . . . . . . . . . . 26

Bordenkircher v. Hayes, 434 U.S. 357 (1978) . . . . . . . . 26

C.E. Carlson, Inc. v. SEC, 859 F.2d 1429 (10th Cir. 1988) . 27

In Re: Federal Grand Jury Proceedings, 975 F.2d 1488

    (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 29

*Glasser v. United States, 315 U.S. 60 (1942) . . . . . . 31, 34

Holmes v. United States, 876 F.2d 1545 (11th Cir. 1989) . . 45

Iannelli v. United States, 420 U.S. 770 (1975) . . . . . . . 30

Koon v. United States, 116 S. Ct. 2035 (1996) . . . . . . . 44

Mars v. Mounts, 895 F.2d 1348 (11th Cir. 1990) . . . . . . . 12

U. S. National Bank of Oregon v. Independent Insurance

    Agents of America, Inc., 508 U.S. 439 (1993) . . . . . . . 18

Owen v. Wainwright, 806 F.2d 1519 (11th Cir. 1986) . . . . . 27

Oyler v. Boles, 368 U.S. 448 (1962) . . . . . . . . . . 26, 28

Russell v. United States, 369 U.S. 749 (1962) . . . . . . . 18

Summers v. Singletary, 119 F.3d 917 (11th Cir. 1997),

    cert. denied, 118 S. Ct. 1188 (1998) . . . . . . . . . . 24

Tibbs v. Florida, 457 U.S. 31 (1982) . . . . . . . . . . . . 34

United States v. Agis-Meza, 99 F.3d 1052 (11th Cir. 1996) 37-38

United States v. Aguon, 851 F.2d 1158 (9th Cir. 1988),

    overruled on other grounds,

    Evans v. United States, 504 U.S. 255 (1992) . . . . . . . 21

United States v. Alston, 895 F.2d 1362 (11th Cir. 1990) . . 13

United States v. Andrews, 765 F.2d 1491 (11th Cir. 1985) . . 29

United States v. Andrews, 953 F.2d 1312 (11th Cir. 1992) . 14,45

CASES                                                    Page(s)

United States v. Arana, 18 F. Supp. 2d 715, 721

   (E.D. Mich. 1998) . . . . . . . . . . . . . . . . . . 23

*United States v. Armstrong, 116 S. Ct. 1480 (1996) . . 26,27-28

United States v. Awan, 966 F.2d 1415 (11th Cir.1992) . . . . 31

United States v. Batchelder, 442 U.S. 114 (1979) . . . . . . 26

United States v. Bazemore, 41 F.3d 1431 (11th Cir. 1994) . . 20

*United States v. Beasley, 2 F.3d 1551 (11th Cir. 1993) . . 36,38

United States v. Bernard, 47 F.3d 1101 (11th Cir. 1995) . . 16

United States v. Brazel, 102 F.3d 1120 (11th Cir. 1997) . . 32

United States v. Broadus, 7 F.3d 460 (6th Cir. 1993) . . . . 21

United States v. Brooks, 611 F.2d 614 (5th Cir. 1980) . . . 29

United States v. Bryant, 671 F.2d 450 (11th Cir.1982) . . . 33

*United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997),

   cert. denied, 118 S. Ct. 1328 (1998) . . . . . . . 13, 36, 38

United States v. Camacho, 40 F.3d 349 (11th Cir. 1994) . . 14,45

United States v. Champion, 813 F.2d 1154 (11th Cir. 1987) . 35

United States v. Chemical Foundation, Inc., 272 U.S. 1(1926). .26

United States v. Chirinos, 112 F.3d 1089 (11th Cir. 1997),

   cert. denied, 118 S. Ct. 701 (1998) . . . . . . . . . . . 29

United States v. Clavis, 977 F.2d 538 (11th Cir. 1992),

   cert. denied, 507 U.S. 998 (1993) . . . . . . . . . . . . 33

United States v. Collins, 779 F.2d 1520 (11th Cir. 1986) . . 12

United States v. Cronic, 466 U.S. 648 (1984) . . . . . . . . 19

United States v. Debrow, 346 U.S. 374 (1953) . . . . . . . . 18

United States v. Delgado, 56 F.3d 1357 (11th Cir. 1995),

   cert. denied, 516 U.S. 1049 (1996) . . . . . . . . . . . 33

CASES                                                        Page(s)

United States v. Eaton, 144 U.S. 677 (1892) . . . . . . . . 16

*United States v. Edenfield, 995 F.2d 197 (11th Cir. 1995) . 44

United States v. Eisenhardt, 10 F. Supp. 2d 521, 521-22

    (D. Md. 1998) . . . . . . . . . . . . . . . . . . . . . 23

United States v. Everett, 129 F.3d 1222 (11th Cir. 1997) . . 43

United States v. Fares, 978 F.2d 52 (2nd Cir. 1992) . . . . 27

United States v. Fischetti, 450 F.2d 34 (5th Cir. 1971) . . 18

*United States v. Fraser, 89 F.3d 1501 (11th Cir. 1996),

    cert. denied, 117 S. Ct. 1719 (1997) . . . . . . 13,36, 38,42

United States v. Gabourel, 9 F. Supp. 2d 1246,

    1246-47 (D. Col. 1998) . . . . . . . . . . . . . . . . 23

United States v. Garcia, 546 F.2d 613 (5th Cir. 1977) . . . 30

United States v. Garmany, 762 F.2d 929 (11th Cir. 1985) . 18,19

United States v. Gates, 967 F.2d 497 (11th Cir. 1992) . . . 29

United States v. Gold, 743 F.2d 800 (11th Cir.1984) . . . . 31

United States v. Gossett, 877 F.2d 901 (11th Cir. 1989) . 12,18

United States v. Greenwood, 796 F.2d 49 (4th Cir. 1986) . . 27

United States v. Guillaume, 13 F. Supp. 2d 1331,

    1334 (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . 23

United States v. Hansley, 54 F.3d 709 (11th Cir. 1995) . . . 42

United States v. Hawes, 529 F.2d 472 (5th Cir. 1976) . . . . 18

United States v. Hayes, 589 F.2d 811 (5th Cir. 1979) . . . . 27

United States v. Hernandez, 896 F.2d 513 (11th Cir. 1990) . . 33

United States v. High, 117 F.3d 464 (11th Cir. 1997) . . . . 33

United States v. Hilliard, 752 F.2d 578 (11th Cir. 1985) . . 45

CASES                                                      Page(s)

United States v. Ismond, 993 F.2d 1498 (11th Cir. 1993)    . 37,38

United States v. Knowles, 66 F.3d 1146 (11th Cir. 1995)    . . 32

United States v. Lawrence, 47 F.3d 1559

   (11th Cir. 1995) . . . . . . . . . . . . . . . . . 37, 38,42

United States v. Levesque, 681 F.2d 75 (1st Cir. 1982) . . . 21

United States v. Lopez-Ramirez, 68 F.3d 438

   (11th Cir.1995) . . . . . . . . . . . . . . . . . . . 12,32

United States v. Love, 134 F.3d 595 (4th Cir.),

   cert. denied, 118 S. Ct. 2332 (1998) . . . . . . . . 13, 21-22

United States v. Lowery, 15 F. Supp. 2d 1348, 1360

   (S.D. Fla. 1998) . . . . . . . . . . . . . . . . . . . . 23

United States v. Lyons, 53 F.3d 1198 (11th Cir.1995) . 13, 31-32

United States v. Martinez, 763 F.2d 1297 (11th Cir. 1985)   . 35

United States v. McGuire, 21 F. Supp. 2d 1264, 1266

   (D. Kan. 1998) . . . . . . . . . . . . . . . . . . . . . 23

United States v. Mers, 701 F.2d 1321 (11th Cir. 1983)   . . . 30

United States v. Mertilus, 111 F.3d 870 (11th Cir. 1997) . 36,38

United States v. Miller, 71 F.3d 813 (11th Cir. 1996)    . . . 44

United States v. Morales, 978 F.2d 650 (11th Cir. 1992)   . . 29

United States v. Noe, 821 F.2d 604 (11th Cir. 1987)    . . . . 31

United States v. Noll, 600 F.2d 1123 (5th Cir. 1979)    . . . . 30

United States v. Olano, 62 F.3d 1180 (9th Cir. 1995)    . . . . 21

United States v. Parham, 16 F.3d 844 (8th Cir. 1994)    . . . . 27

United States v. Parr, 716 F.2d 796 (11th Cir. 1983)    . . . . 29

United States v. Parrado, 911 F.2d 1567 (11th Cir. 1990)   . . 33

CASES                                                                Page(s)

United States v. Peete, 919 F.2d 1168 (6th Cir. 1990)   . . .  27

United States v. Perea, 413 F.2d 65 (10th Cir. 1969)   . . . .  16

United States v. Quiala, 19 F.3d 569 (11th Cir. 1994)   . . .  12

United States v. Quinn, 123 F.3d 1415 (11th Cir. 1997)   . . .  30

United States v. Saget, 991 F.2d 702 (11th Cir. 1993)   . . .  19

*United States v. Sanchez, 138 F.3d 1410 (11th Cir.),

    cert. denied, 119 S. Ct. 414 (1998)   . . . . . . . . . .  44

*United States v. Schlei, 122 F.3d 944 (11th Cir. 1997),

    cert. denied, 118 S. Ct. 1523 (1998) . . . . . . . . . .  42

United States v. Shabani, 513 U.S. 10 (1994) . . . . . . . .  31

United States v. Silien, 825 F.2d 320 (11th Cir. 1987)   . . .  27

United States v. Singleton, 144 F.3d 1343

    (10th Cir. 1998), vacated, No. 97-3178,

    1999 WL 6469 (10th Cir. (Kan.) 1999) . . . . . . . . . 22,23

United States v. Sivils, 960 F.2d 587 (6th Cir. 1992)   . . .  21

United States v. Slay, 714 F.2d 1093 (11th Cir. 1983)   . . .  24

United States v. Stanley, 24 F.3d 1314 (11th Cir. 1994)   . .  32

*United States v. Strange, 102 F.3d 356 (8th Cir. 1996)   . . .  37

United States v. Tokars, 95 F.3d 1520 (11th Cir. 1996),

    cert. denied, 117 S. Ct. 1328 (1997) . . . . . . . . . 13,34

*United States v. Toler, 144 F.3d 1423 (11th Cir. 1998)   13,31-32

United States v. Ventura, 936 F.2d 1128 (11th Cir. 1991)   . .  29

United States v. Williams, 954 F.2d 668 (11th Cir. 1992)   . .  44

United States v. Young, 39 F.3d 1561 (11th Cir. 1994)   . . .  23

Wayte v. United States, 470 U.S. 598 (1985)   . . . . . . . .  26

# TABLE OF AUTHORITIES (continued)

**STATUTES**                                                      Page(s)

18 U.S.C. § 2   . . . . . . . . . . . . . . . . . . . . .   x, 2, 33

18 U.S.C. § 201(c)(2)   . . . . . . . . . . . . . . . . . .   22

21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. §924(c)     x, 1

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . x

21 U.S.C. § 846   . . . . . . . . . . . . . . . . . . .   x, 1-2, 31

21 U.S.C. §§ 846 and 841(a)(1) . . . . . . . . . . . . . . . 1-2

28 U.S.C. §§ 41, 1291, and 1294(1) . . . . . . . . . . . . . x

28 U.S.C. § 455 . . . . . . . . . . . . . . . . . . . . . 23, 24

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . 45

**RULES**

Fed. R. Crim. P. 18   . . . . . . . . . . . . . . . . . . .   x,17

Fed. R. Crim. P. 24(c) . . . . . . . . . . . . . . . . .   13,20-21

Fed. R. Crim. P. 52   . . . . . . . . . . . . . . . . . . .   21

Fed. R. Evid. 801(d)(2)(E) . . . . . . . . . . . . . . . . 20

**OTHER**

28 C.F.R. § 0.85 . . . . . . . . . . . . . . . . . . . . . 16

USSG § 2D1.1 . . . . . . . . . . . . . . . . . . . . . . . 43

USSG § 5C1.2 . . . . . . . . . . . . . . . . . . . . . . . 43

USSG § 1B1.3 . . . . . . . . . . . . . . . . . . . . . . . 36

USSG § 5K1.1 . . . . . . . . . . . . . . . . . . . 2,36, 38,42

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter because this matter involves an appeal from a final judgment of conviction and sentence in a criminal case entered by a district court within this circuit. 28 U.S.C. §§ 41, 1291, and 1294(1).

The instant prosecution in the district court was for violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Venue was appropriately placed in the Southern District of Georgia under 18 U.S.C. § 3231 and Fed. R. Crim. P. 18.

## ISSUES PRESENTED FOR REVIEW

I.     Whether Jurisdiction was Properly Before the District Court.

II.     Whether the Indictment Changes were Valid.

III.     Whether the Trial Court Abused Its Discretion in Denying Coleman's Motions for a Continuance.

IV.     Whether the Trial Court Committed Reversible Error by Selection of Alternate Jurors.

V.     Whether the Government Violated ~~Videotaped~~ the Federal Bribery Statute.

VI.     Whether the Court erred in Denying the Motion to Dismiss on the Basis of Selective Prosecution.

VII.     Whether Coleman was Entrapped.

VIII.     Whether the Evidence was Sufficient to Sustain the Conviction.

IX.     Whether Coleman's Motion for New Trial was Properly Denied.

X.     Whether the District Court Erred in Calculating the Defendants' Sentence.

## STATEMENT OF THE CASE

### 1. Proceedings in the District Court.

On September 10, 1997, the grand jury for the Southern District of Georgia returned an indictment (CR497-181) charging Keith Coleman, Frederick Gorham, Keith London, Damion Welcome, and Eugene Johnson with drug violations. R1-1. Coleman and Welcome were also charged with firearm violations. R1-1.

Count One charged all defendants with conspiring to aid and abet the distribution of cocaine, between November 1996 and March 1997, in violation of 21 U.S.C. § 846.

Counts Two and Four charged Keith Coleman with attempting to aid and abet the distribution of cocaine on October 1, and 31, respectively, of 1996, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2.

Count Three charged Keith Coleman with carrying a firearm during the drug trafficking offense that was set forth in Count Two, in violation of 18 U.S.C. § 924(c).

Counts Five and Six charged Keith Coleman, Frederick Gorham, and Keith London with attempting to aid and abet the distribution of cocaine on November 20, 1996 and December 10, 1996, respectively, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. § 2.

Count Seven charged Keith Coleman and Damion Welcome with attempting to aid and abet the distribution of cocaine on January 6, 1997, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. § 2. Count Eight charged Damion Welcome with carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Count Nine charged Keith Coleman, Keith London, Damion Welcome, and Eugene Johnson with attempting to aid and abet the distribution of cocaine on January 30, 1997, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and 18 U.S.C. § 2.

Keith Coleman appeared at his initial appearance with retained counsel. R4-32. All other defendants were appointed counsel. The defendants were later arraigned and entered pleas of not guilty. Damion Welcome later changed his plea to Count 7 to that of guilty pursuant to a plea agreement with the government. R1-64. The agreement provided that if the government believed the defendant had provided substantial cooperation, then the government would file a USSG § 5K1.1 motion for downward departure. R3-232. The government later filed the § 5K1.1 motion on behalf of Welcome, which was granted at sentencing. R3-213, 233.

Keith Coleman, Keith London, Frederick Gorham, and Eugene Johnson were tried by a jury. Coleman, London, and Gorham were found guilty on all counts. R3-207, 208, 209. Johnson was found not guilty on all counts. R3-210.

On January 28, 1998, a sentencing hearing was held for Keith Coleman, Keith London, and Frederick Gorham. R3-236, 237, 238. After hearing evidence, the district court made factual findings and sentenced the defendants. London was sentenced to serve 206 months in custody and five years supervised release on Counts 1, 5, 6, and 9, to run concurrently. Gorham was sentenced to serve 235 months in custody and five years supervised release on Counts 1, 5, and 6, to be served concurrently. Coleman was sentenced to life imprisonment as to Count 1, 480 months as to Counts 2, 4, 5, 6, 7 and 9, concurrent, and 60 months consecutive, as to Count 3,

2

followed by 5 years supervised release. R3-238. The judgements were entered on the day of sentencing. R3-236, 237, 238. Gorham filed his notice of appeal on January 28, 1998, and Coleman and London filed their notices of appeal on February 5, 1998.

Each defendant filed a timely notice of appeal. R3-239, 240, 241. All are incarcerated pending this appeal. Keith Coleman is at Leavenworth USP, Keith London is at Butner FCI, and Frederick Gorham is at Cumberland FCI.

## 2. STATEMENT OF THE FACTS

### THE INITIATION OF THE INVESTIGATION

In 1994, the Federal Bureau of Investigation (FBI) in Savannah, Georgia, and the Counter Narcotics Team of Chatham County (CNT) began receiving complaints of police corruption. R7-255-39. This information came from various sources including informants, defendants, and Silent Witness reports. R7-255-39. In an attempt to identify corrupt officers, the FBI and CNT began an undercover investigation in 1995. R7-255-43, 44, 76. A previously convicted Savannah police officer had referred the FBI to Walter Heyward, who also had previously been convicted of narcotics offenses. R7-255-40,87. Heyward agreed to act as a paid cooperating witness (CW) in the investigation, and began to gather evidence for the FBI regarding corrupt police activity. R7-255-42,43. To assist the CW in gathering evidence, the FBI "wired" a number of locations, including cars, offices, and apartments, with recording equipment. R7-255-51. (No non-consensual recordings were undertaken). Over the course of the investigation approximately 560 consensual tape recordings were made. R7-255-94. The CW worked as an informant for almost two years, gathering a large majority of these

3

recordings. R7-255-51,66. Due to safety concerns, the CW was relocated on several occasions and was eventually moved away from Savannah. R7-255-66. He was also compensated financially for his efforts. R7-255-64.

After the investigation was well underway, the FBI introduced several undercover agents to assist in the investigation. R7-255-49. These agents played the roles of members of a Miami drug organization who were bringing cocaine from Miami and storing it in Savannah warehouses to await further transfer for distribution. R7-255-50,144,145. On most occasions, these undercover agents, acting as couriers, were transporting in their vehicles or on their persons, 4.7 kilograms of actual cocaine. R7-255-132,136,137. KC PSI-5,6,7. The corrupt police officers provided protective escorts of these drug couriers to ensure safe passage of the cocaine and were then paid for their services. R7-255-145. KC PSI-6,7,8,18. FBI Special Agent (SA) Anthony Velazquez worked undercover as a drug trafficker who was introduced to corrupt police officers by the CW. One such officer SA Velazquez met was Thomas Bryant. R7-255-146, 147.

### THOMAS BRYANT

In late 1995, the CW informed the FBI and CNT that officer Thomas Bryant, Jr. of the Savannah Police Department was corrupt. R7-255-44,45. The FBI began actively gathering evidence of Bryant's corrupt activities through the CW and later, the undercover agents. R7-255-43,44. Over the course of the investigation, Bryant distributed cocaine to the CW and sold weapons to the CW, a felon. R7-255-47; R8-256-459.

4

After the CW introduced SA Velazquez to Bryant, Velazquez outlined the drug operation for Bryant. R7-255-148. Velazquez explained that cocaine was brought into Savannah from Miami and stored at a warehouse. SA Velazquez explained that the operation required the services of police officers to ensure the safe passage of cocaine into Savannah where it would be guarded by the officers at a warehouse. R7-255-148. During the course of Bryant's involvement, he provided protective escorts for 12 cocaine shipments coming in to Savannah. R7-255-46,47; KC PSI-5. Thomas Bryant also introduced other officers who were willing to help protect the cocaine shipments. R7-255-47. The case agents set two requirements for an officer to be brought into the operation: 1) they had to already be involved in illegal activity, and 2) they had to be informed that they were protecting cocaine. R8-256-468. One such police officer Bryant introduced to assist with the cocaine protection was Keith Coleman. R7-255-74.

## KEITH COLEMAN

In September 1996, Bryant informed the CW that Keith Coleman was another Savannah police officer who participated in this type of activity and was "down." R7-255-74,75,154. Bryant told the CW that Coleman was dealing with other drug dealers on the street. R8-256-461,491. When the CW first met Keith Coleman, he told Coleman that "ki's" of cocaine were coming in to Savannah. R8-256-469. After the operation was explained to him, Coleman wrote down on a piece of paper the price he would charge to protect the cocaine -- $3,000. R8-256-473. After further negotiation with the CW, Coleman agreed to a price of $2,000 to protect the first shipment. R8-256-473. SA Velazquez told Coleman that the

5

organization would be bringing into Savannah "40-50 kilos," and not just "two or three grams that you got in your pocket." R7-255-183.

Soon after Bryant introduced Coleman into the operation, Bryant was fired from the Savannah Police Department. R7-255-175. Coleman warned SA Velazquez that Bryant was now a security risk and Coleman preferred to use his "own guys" as protective escorts. R7-255-178; R8-256-496. SA Velazquez admonished Coleman that "everybody's got to know it's dope." R7-255-186. Coleman, attempting to persuade SA Velazquez that his own recruits were trustworthy, stated, "...my guys that I use. I know my guys. They loyal to me and they gonna do whatever I tell them." R7-255-179.

Coleman went on to introduce four fellow officers to the operation, Keith London, Frederick Gorham, Damion Welcome and Eugene Johnson. KC PSI-29.

THE DEALS

### 1. October 1, 1996 - Coleman and Bryant

Coleman and Bryant, both in police uniforms with police issued firearms, and utilizing their police vehicles, escorted the CW from interstate highway 95 to the warehouse and then to a hotel. The CW had 4.7 kilograms of cocaine during this escort. R8-256-480-483. Coleman was paid $2,000. KC PSI-6.

### 2. October 30-31, 1996 - Coleman and Banks

Coleman and another officer, William Banks, drove to St. Marys so that the CW could meet SA Velazquez at an airport and retrieve a briefcase. The next day, Coleman and Banks, utilizing a police car, escorted the CW with 4.7 kilograms of cocaine across the state border to a South Carolina rest stop. KC PSI-7. After the deal concluded, Banks and Coleman departed with blue lights flashing.

6

R8-256-751. Coleman, standing alongside the CW's vehicle at the rest stop, was paid $3,000 by the CW.[1]  R8-256-510; KC PSI-7.

3.    **November 20, 1996 - Introduction of London and Gorham**

After Bryant was fired, Coleman introduced into the operation Frederick Gorham and Keith London.  At an initial meeting, the CW told Gorham and London: "Let you know what's coming in.  Cocaine. You can do it.  If you don't, you can hit the door right now.  If you don't want to do it, it still won't be no hard feelings.... Everybody can depart on good terms."  R8-256-529, 530.

Gorham and London agreed to participate and they each wrote down on a piece of paper the price they would charge for protection -- $3,000.  R8-256-536, 537.  The CW informed them that "kilos of cocaine" were coming into Savannah.  R8-256-542.  Coleman told them that "truckloads" were involved and if the need to dispose of cocaine arose, they could not just throw away "30, 40, 50 thousand dollars" worth.  R8-256-541.  Gorham and London were told by the CW that they needed their badge and gun.  R8-256-532.

On November 20, Coleman escorted the CW to the Savannah airport, while Gorham and London escorted a courier with 4.7 kilograms of cocaine from a gas station to a downtown Savannah hotel and back.  R8-256-374, 560-562; KC PSI-10. Pursuant to previous instructions by Gorham and London, the CW paid Coleman in

---

[1]Later Coleman changed the method of payment to require that the money be placed in an envelope citing, "No counting by the car," because some tourist "might want to mail some shit to *60 Minutes*... `I saw police taking some money by a car.  Why would he be doing that?'"  R8-256-519.

7

an envelope $3,500 and $3,000 each for London and Gorham. R8-256-543, 563.

4. **December 10, 1996 - Coleman, London and Gorham**

On December 10, Coleman, London and Gorham provided protective escorts for the CW and SA Velazquez and a courier carrying 4.7 kilograms of cocaine. R8-256-374; KC PSI-11. The CW, in SA Velazquez' presence, confirmed with London and Gorham that their price of $3,500 was acceptable. R7-255-242.

Coleman was later paid $10,500 in three separate envelopes, representing payment for London, Gorham, and Coleman. R8-256-589, 590. Coleman, attempting to justify the increased price for London and Gorham, told SA Velazquez that they had "done some shit before...as far as dealing with the coke...they know what time it is, as far as what the money is with the coke." R7-255-235, 236.

The CW later telephoned Keith London to verify that he had received payment of $3,500. R8-256-591.

5. **January 6, 1997 - Introduction of Damion Welcome**

In December, 1996, Coleman introduced Chatham County Deputy Sheriff Damion Welcome to the operation. R8-256-593, 594. Coleman requested a protective escort to initiate Welcome. R8-256-604, 606.

On January 6, 1997, the CW weighed approximately five kilograms of cocaine in Welcome's presence, and Welcome and Coleman provided an escort for the CW. R8-256-607; KC PSI-13. Welcome later told Coleman about the "dope on the table." R8-256-614. Coleman was paid $7,000, representing $3,500 each for him and Welcome; however, Welcome later claimed to have only received $500. KC PSI-13.

8

## 6. January 30, 1997 - Introduction of Eugene Johnson

Coleman later introduced the CW to Eugene Johnson, and Coleman told Johnson that they were bringing in cocaine by "the goddamn truckloads." R8-256-642.

On January 29, 1997, Coleman, Welcome, London, and Johnson all unexpectedly arrived at the undercover apartment where the CW was and began to search the apartment, almost discovering the hidden recording equipment. R8-256-664-668.

The next day, Coleman, London, Welcome, and Johnson provided a protective escort for the CW and a separate escort for a courier. KC PSI-16. Due to the unexpected search of the apartment the day before, the FBI decided not to use actual cocaine during this protective escort. R7-255-253. However, a total payment of $14,000 was made to Coleman for the four officers' two protective escorts. KC PSI-16.

## 7. March 12, 1997 - The Last Deal

Coleman continued to push for more work and more money. R7-255-255, 261, 275. SA Velazquez agreed to pay Coleman for another deal, but only $1,500 for Coleman alone. R7-255-289, 291. Coleman, dissatisfied with this, told the CW, "If I knowed I was fucking with a motherfucker off the corner who can't afford no more than $1,500, his black ass would be in prison." R8-256-690, 691. Nonetheless, Coleman agreed to escort SA Velazquez to the airport for $2,000.00 and this was done on March 12, 1997.

### THE CONFESSIONS

After they were arrested and advised of their constitutional rights, Coleman, Gorham, and London each waived their rights and

were interviewed. They each made admissions concerning their role in the conspiracy, as set forth below.

Keith London executed a written rights waiver and stated that he had agreed to protect three shipments of cocaine transported to a warehouse. R9-259-975, 977, 978, 980. He admitted that he had written down various sums of money that he would accept for providing this service. R9-259-978. London also admitted that during these protective escorts, he had always carried his Glock .45 caliber police issued weapon and a shotgun. R9-259-979, 980.

Coleman waived his rights and stated that the CW had informed him that he was moving cocaine, but Coleman "did not believe him." R9-259-2005. Coleman also admitted that the CW paid Coleman to escort him around "so that no one would jack him." R9-259-1005. Coleman made a written statement reflecting that the CW advised him that "he had dope in the car." R9-259-1008.

Gorham also waived his rights and admitted to being paid for providing escorts for cocaine shipments. R8-256-918, 921, 924, 925, 927. Gorham provided a written statement acknowledging that he "would be providing security for [the CW] while he moved cocaine." R8-256-927.

### SENTENCING

An evidentiary hearing was held in which U. S. Probation Officer (PO) Richard Long testified regarding the presentence investigation of the three defendants. PO Long testified that Coleman participated in six protective escorts, and that 4.7 kilograms of cocaine had been utilized each time in five of these escorts. R12-265-15. PO Long found that Coleman received $46,000, and that the total amount of cocaine attributed to Coleman should

10

be 28.2 kilograms. R12-265-16. The district court found the quantity attributed to be "conservative," but "reasonable" and "foreseeable," and the court adopted it. R12-265, 23, 24, 26, 56. After enhancements were considered for role in the offense and obstruction of justice, the district court found Coleman's guidelines to be a total offense level of 42 with a range of 360 months to life, plus 60 months as to Count 3.

PO Long testified that Frederick Gorham participated in two protective escorts, involving multiple couriers, with each escort involving 4.7 kilograms of cocaine, and that Gorham was paid at least $3,000.00. R11-264-8, 11, 12. Additionally, the CW told Gorham at the outset that "ki's" of cocaine would be brought to the warehouse. R11-264-8, 9. The district court adopted the factual findings and application of the guidelines submitted by the probation officer that resulted in a total offense level of 36. R11-264-19.

Mr. Gorham stated at sentencing that he did not know he was protecting cocaine. R11-264-27. However, the district court noted that Gorham's statements were "troubling" and "totally unbelievable," given the evidence at trial, and sentenced him at the top of the guidelines. R11-264-32, 33.

The probation officer found that Mr. London participated in three scenarios and he was attributed a total of 14 kilograms. R11-264-12. Again, London had been informed from the outset that "ki's" of cocaine would be brought into the warehouse by multiple couriers. KL PSI, add.-1.

The district court adopted the findings and applications of the probation officer resulting in a base offense level of 32, plus

enhancements for abuse of position of trust and possession of a dangerous weapon, resulting in a total offense level of 36, with a range of 188-235 months.

3. **Standards of Review**

**Jurisdiction**

Whether a court has jurisdiction over a particular case is a question of law subject to plenary review. See Mars v. Mounts, 895 F.2d 1348, 1351 (11th Cir. 1990).

**Denial of Motion to Dismiss Indictment**

The review of a denial of a motion to dismiss the indictment falls under an abuse of discretion standard. United States v. Quiala, 19 F.3d 569, 570 (11th Cir. 1994).

**Denial of Motion for Continuance**

The denial of a continuance is reviewed by an abuse of discretion standard. United States v. Gossett, 877 F.2d 901, 906 (11th Cir. 1989).

**Evidentiary Rulings**

The general standard for review of evidentiary rulings is whether the district court committed an abuse of discretion. United States v. Collins, 779 F.2d 1520, 1531 (11th Cir. 1986).

**Sufficiency of the Evidence to Sustain Conspiracy Conviction**

In reviewing a conviction for sufficiency of the evidence, this Court examines the evidence *de novo* in the light most favorable to the government, to determine whether a reasonable jury could have concluded beyond a reasonable doubt that the defendant was guilty of the crime charged. United States v. Lopez-Ramirez, 68 F.3d 438, 440 (11th Cir.1995). A verdict of guilty must stand

12

if there is substantial evidence to support it "unless no trier of fact could have found guilt beyond a reasonable doubt." <u>United States v. Toler</u>, 144 F.3d 1423, 1428 (11th Cir. 1998), *citing* <u>United States v. Lyons</u>, 53 F.3d 1198, 1202 (11th Cir.1995).

## Entrapment

The issue of entrapment is a question initially for the trial judge and the standard of review is abuse of discretion. <u>United States v. Alston</u>, 895 F.2d 1362, 1368 (11th Cir. 1990).

## Selection of Alternate Jurors

Deviations from Fed. R. Crim. P. 24(c) in the selection of alternate jurors rise to the level of reversible error only when the defendant has demonstrated actual prejudice affecting his substantial rights. <u>United States v. Love</u>, 134 F.3d 595, 601 (4th Cir.), <u>cert. denied</u>, 118 S. Ct. 2332 (1998).

## Denial of New Trial Motion

This Court reviews the lower court's denial of a motion for new trial under the abuse of discretion standard. <u>United States v Tokars</u>, 95 F.3d 1520, 1531 (11th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1328 (1997).

## Quantity of Cocaine at Sentencing

This Court reviews for clear error the district court's determination as to the quantity of drugs attributable to a defendant for purposes of sentencing under the sentencing guidelines. <u>United States v. Calderon</u>, 127 F.3d 1314, 1341 (11th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1328 (1998); <u>United States v. Fraser</u>, 89 F.3d 1501, 1506 (11th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1719 (1997).

## Ineffective Assistance of Counsel

Generally, this Court does not consider ineffective assistance claims on direct appeal, "because there usually has been insufficient opportunity to develop the record regarding the merits of these claims." United States v. Camacho, 40 F.3d 349, 353 (11th Cir. 1994); United States v. Andrews, 953 F.2d 1312, 1327 (11th Cir. 1992).

## SUMMARY OF THE ARGUMENTS

The FBI had proper jurisdiction to investigate the offenses and jurisdiction over the defendants was properly vested in the district court. The charges in the indictment were valid.

The district court did not abuse its discretion in denying Coleman's motion for a continuance and his motion in limine. The court did not commit reversible error in deselection of alternate jurors.

There was no selective prosecution and no entrapment. The government did not violate the federal bribery statute.

The evidence was sufficient to sustain the conspiracy conviction. The Court did not err in calculating the defendants' sentence. There was no error in denying London's request for a downward departure. The Court did not err in denying Coleman's motion for a new trial.

## ARGUMENT AND CITATION OF AUTHORITY

I. Jurisdiction

A. The FBI had proper jurisdiction to investigate the charged offenses and the district court properly denied Coleman's motion to exclude all evidence gathered by the FBI. (Coleman's 1 & 16)

Coleman argues that the FBI lacked jurisdiction to investigate the offenses and as a result, the district court should have excluded all evidence gathered by the FBI. However, the FBI has appropriate jurisdiction to "investigate violations of the laws, including the criminal drug laws of the United States." 28 C.F.R. § 0.85. Coleman's motion to exclude all evidence resulting from the FBI investigation was properly denied because there were no legitimate grounds to support inadmissibility of any evidence.

B. The United States had proper jurisdiction over Coleman; jurisdiction for trial of the defendant was properly vested in the district court. (Coleman's 2, 4, & 20)

Coleman complains that the government failed to show that he "violated any laws of the U.S. in a place over which the U.S. has jurisdiction." Coleman's brief, p.6. Additionally, he argues that the court lacked subject matter jurisdiction over him.

Only those offenses which are defined by an act of Congress may be prosecuted by the United States. United States v. Eaton, 144 U.S. 677, 687 (1892). The district courts of the United States have "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. This includes drug offenses in violation of Title 21 of the United States Code. United States v. Bernard, 47 F.3d 1101, 1103 (11th Cir. 1995); United States v. Perea, 413 F.2d 65, 67

(10th Cir. 1969).  Furthermore, the prosecution of a federal offense "shall be had in a district in which the offense was committed."  Fed. R. Crim. P. 18.  At trial, the government proved that the bulk of Coleman's illegal activities in attempting to assist the distribution of cocaine occurred in and around Chatham County, in the Southern District of Georgia.  R8-256-695. Jurisdiction over Coleman was properly vested in the district court in the Southern District of Georgia.

II.  **Validity of Indictment Charges and Law** (Coleman's 3, 5-10)

Coleman's arguments in this vein are variations on the theme that, because the indictment alleged violations of the United States Code, rather than violations of the actual laws of the United States, the indictment was insufficient, and his prosecution therefore rendered null and void.  His contentions misconstrue the nature of legislation and the significance of the codification of law.

A piece of legislation takes effect according to its terms when Congress properly approves a bill and the President either signs it, fails to object within ten days, or vetoes it but Congress overrides the veto.  This, and only this, is legislation or statutory law.  Codification of existing legislation is an entirely different, subsequent, and largely ministerial matter, directed towards the goal of collecting the multitude of congressional enactments in force and organizing them in a readily accessible manner.  The "United States Code" is, of course, such a codification.  Acts of Congress do not take effect or gain force by virtue of their codification into the U. S. Code; rather, they are

17

simply organized in a comprehensive way under the rubric of appropriate titles, for ready reference.

The appearance of a provision in the current edition of the United States Code is "prima facie" evidence that the provision has the force of law. _U. S. Nat. Bank of Oregon v. Independent Insurance Agents of America, Inc._, 508 U.S. 439, 448 (1993). An indictment is required to set forth the elements of the offense charged, so that defendants are sufficiently apprised of the charge which they must prepare to meet. _United States v. Hawes_, 529 F.2d 472, 480 (5th Cir. 1976); _Russell v. United States_, 369 U.S. 749 (1962); _United States v. Debrow_, 346 U.S. 374 (1953); _United States v. Fischetti_, 450 F.2d 34 (5th Cir. 1971). Such was the case with the instant indictment.

III. **Allegations of Error By the Trial Court**

A. **The trial court did not err in denying Coleman's motion for a continuance. (Coleman's 12)**

Coleman alleges that the trial court erred in denying his motion for a continuance. The denial of a continuance requested by a defendant to permit additional preparation for trial will be upheld unless the defendant can show "an abuse of discretion and specific, substantial prejudice...." _United States v. Gossett_, 877 F.2d 901, 906 (11th Cir. 1989). To do so, the defendant must identify relevant, non-cumulative evidence that would have been presented if the request for a continuance had been granted. _United States v. Garmany_, 762 F.2d 929, 936-937 (11th Cir. 1985).

Coleman did not make that showing. Claiming only that counsel needed a continuance to prepare a defense, Coleman failed to identify any additional evidence that he would have presented, or

18

anything else that he would have done differently, if his request for a continuance had been granted. In the absence of any specific, substantial prejudice, the motion was properly denied.

In a similar case, <u>United States v. Saget</u>, 991 F.2d 702, 709 (11th Cir. 1993), this Court upheld the district court's denial of a motion for continuance in a police corruption case, where the defense complained that voluminous documents were provided only two weeks prior to trial. This Court found that the defense failed to point to any specific or substantial prejudice arising from the district court's denial of the motion for a continuance. Similarly, in the instant case, counsel for Coleman can point to no substantial prejudice.

As the Supreme Court has stated, "Neither the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant" to defense counsel's ability to properly defend the case. <u>United States v. Cronic</u>, 466 U.S. 648, 663 (1984).

Moreover, it was Coleman himself who created the situation he complains of. Coleman substituted new defense counsel only two weeks prior to trial. Coleman's trial counsel was the third attorney retained by Coleman. R4-32; R5-262-3, 5.

"Because of the great latitude that must be afforded a trial judge in scheduling matters, a trial court has broad discretion in ruling on requests for continuances." <u>Garmany</u>, 762 F.2d at 936. The district court cannot be manipulated by a defendant through the simple expedient of substituted counsel. There was no abuse of discretion by the trial court in denying Coleman's motion.

19

B.  The trial court did not err in denying Coleman's motion in limine. (Coleman's 18)

The district court properly denied Coleman's motion in limine to exclude testimony as to statements made concerning his relationship to a convicted Chatham County Commissioner.[2]  Anthony Bryant vouched for Coleman's suitability for participating in the instant conspiracy given his connections with the commissioner. R7-255-172, 173.  Such statements were clearly within the co-conspirator hearsay exception and were inextricably intertwined. The rule in this Circuit is that a liberal standard governs whether statements were made in furtherance of a conspiracy.  United States v. Bazemore, 41 F.3d 1431, 1434 (11th Cir. 1994).  Those statements attributed to Anthony Bryant concerning Coleman's relationship with the commissioner were therefore admissible under Fed. R. Evid. 801(d)(2)(E), as the statement of a co-conspirator "during the course and in furtherance of the conspiracy."  The district court did not err in its evidentiary rulings pertaining to these statements.

C.  The district court did not commit reversible error by the selection (or deselection) of alternate jurors by lottery just prior to deliberation.  (Coleman's 13/Gorham's 4)

The selection of alternate jurors is governed by Fed. R. Crim. P. 24 (c), which provides that alternate jurors will replace regular jurors in the order in which they are called.  At trial, after closing arguments, the district court informed counsel that

_____

[2]Coleman was related by marriage to a county commissioner who was convicted in an unrelated federal drug case.

it planned to remove two of the seated 14 jurors at random. No counsel offered any objection. R10-260-1388,1389. Coleman and Gorham now contend that the trial court erred in selecting (or deselecting) the alternate jurors by lottery. Because no objection was raised, a plain error standard applies. Fed. R. Crim. P. 52.

Although a deviation from Rule 24(c) should not be encouraged, not every violation results in actual prejudice affecting substantial rights of the defendant. United States v. Love, 134 F.3d 595, 601 (4th Cir.), cert. denied, 118 S. Ct. 2332 (1998). As was pointed out in Love, a number of circuits have found that violations of Rule 24(c) do not require reversal. In a certain Sixth Circuit case, the court impanelled 14 jurors to hear the case and designated two alternates by random selection at the conclusion of the trial, but prior to deliberations. This was found to be harmless error because no actual prejudice could be shown. United States v. Sivils, 960 F.2d 587, 593 (6th Cir. 1992). The district court in the case *sub judice* did precisely that. See also, United States v. Olano, 62 F.3d 1180, 1190 n.3 (9th Cir. 1995)(waiting until close of case but before deliberations to designate alternates was not plain error); United States v. Broadus, 7 F.3d 460, 462 (6th Cir. 1993)(designating alternates just prior to deliberations not plain error); United States v. Aguon, 851 F.2d 1158, 1171 (9th Cir. 1988), overruled on other grounds, Evans v. United States, 504 U.S. 255 (1992)(designating and discharging alternates just prior to deliberation was harmless error); United States v. Levesque, 681 F.2d 75, 80 (1st Cir. 1982)(assigning

alternate juror out of order to replace regular juror does not require reversal).

Coleman and Gorham interposed no objection at trial, nor do they demonstrate on appeal how they were prejudiced. Mere speculation as to how each might have exercised his strikes is not sufficient to overturn the jury verdict. In fact, as in _Love_, 134 F.3d 595, it is difficult to discern any scenario in which the defendants could have been prejudiced. Therefore, if there was any error, it was harmless.

**D. The government did not violate the federal bribery statute in obtaining trial testimony of its witnesses. (Coleman's 21)**

Coleman's claim that the testimony of government compensated witnesses should be suppressed because this evidence was obtained in violation of 18 U.S.C. § 201(c)(2) is meritless. This statute prohibits giving, offering, or promising anything of value to a witness for or because of his testimony. Although Coleman does not cite the Tenth Circuit's decision in _United States v. Singleton_, 144 F.3d 1343 (10th Cir. 1998), _vacated_, No. 97-3178, 1999 WL 6469 (10th Cir. (Kan.) 1999) (_en banc_), his argument would require the Court to adopt the rationale of that decision. However, that case was the first instance in which any court concluded that plea agreements in which the government promised to move the court for sentence reductions for criminal defendants who would testify truthfully at other prosecutions should be suppressed based on § 201(c)(2). Moreover, the Tenth Circuit has vacated its decision in _Singleton_, belatedly recognizing the argument advanced as "patently absurd," and finding 201(c)(2) inapplicable to United States

22

Attorneys and their Assistants functioning within the official scope of their office. <u>Singleton</u>, 1999 WL 6469, at *1, *3.

This Court should decline to find the government's use of a cooperating witness violative of § 201. The vast majority of district courts which have been presented with this type of question have soundly rejected <u>Singleton</u>-based challenges. <u>See</u> <u>United States v. McGuire</u>, 21 F. Supp. 2d 1264, 1266 (D. Kan. 1998); <u>United States v. Arana</u>, 18 F. Supp. 2d 715, 721 (E.D. Mich. 1998); <u>United States v. Guillaume</u>, 13 F. Supp. 2d 1331, 1334 (S.D. Fla. 1998); <u>United States v. Eisenhardt</u>, 10 F. Supp. 2d 521, 521-22 (D. Md. 1998); <u>United States v. Gabourel</u>, 9 F. Supp. 2d 1246, 1246-47 (D. Col. 1998). <u>But see</u>, <u>United States v. Lowery</u>, 15 F. Supp. 2d 1348, 1360 (S.D. Fla. 1998)(adopting <u>Singleton</u> and excluding testimony of cooperating witness).

No violation occurred.

## E. Recusal of district judge (Coleman's 22)

Citing absolutely no authority, Coleman argues that the district judge should have recused himself in light of his stated refusal to permit counsel at trial to "play the race card." R3-184. Coleman deems this refusal biased and prejudicial, and contends that the judge's refusal to hear racially charged arguments harmed his defense. 28 U.S.C. § 455 states in pertinent part, that "[a]ny ...judge...shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned." <u>See</u> <u>United States v. Young</u>, 39 F.3d 1561 (11th Cir. 1994). The failure to recuse constitutes reversible error only where the conflict of interest is readily apparent and the risk of impartiality is substantial. <u>Id.</u>

23

This Circuit held, in an issue of first impression, that a motion to disqualify a judge pursuant to 28 U.S.C. § 455 on the ground of genuine conflicts of interest or actual bias must be timely filed, regardless of whether the basis for the motion is the appearance of impropriety (§ 455(a)), or actual conflict of interest (§ 455(b)).  Summers v. Singletary, 119 F.3d 917, 921 (11th Cir. 1997), cert. denied, 118 S. Ct. 1188 (1998); United States v. Slay, 714 F.2d 1093 (11th Cir. 1983).  In so holding, the court stated that the policy considerations supporting a timeliness requirement are to 1) conserve judicial resources and 2) prevent a litigant from waiting until an adverse decision has been handed down before moving to disqualify the judge.  Summers, 119 F.3d at 921.  The court in Summers held that a motion to disqualify filed under § 455(b) must be filed within a reasonable time after the grounds for the motion are ascertained.

In this case, however, Coleman neither filed such a motion, nor raised the issue before the district court, either at trial or in a post-trial motion.  His assertion of this ground for the first time on direct appeal is untimely; the issue is not properly before this Court.  No error occurred.

IV.  **There Was No Selective Prosecution**

The district court did not err in denying the defendants' motion to dismiss on the basis of selective prosecution because there was no selective prosecution.  (Coleman's 11, Gorham's 3)

Coleman and Gorham boldly assert in their brief, without any substantiation, that they were "targeted" for prosecution because of their race.  Citing absolutely no evidence, they claim that "non-African American officers were involved in illegal activities

24

but the FBI chose to ignore them and pursue African-American officers." Gorham brief, p.12; Coleman brief, p. 13.

The trial court explored this matter thoroughly and found absolutely no hint of selective prosecution. District Court Order dated November 14, 1997. R2-168. In response to the defendants' motion to dismiss, the government submitted affidavits of the three case agents which traced the path of the investigation. R2-164. As one stated, "every effort was made by the investigative agents to identify all corrupt police officers, regardless of race." R2-164-McAllister Aff.

Citing the lack of evidence produced by the defendants in support of their motion, the district court found that they "failed to meet the 'rigorous standard for discovery in aid of their selective prosecution claim.'" (Citations omitted). R2-168-5. The district court found that the defendants placed "much reliance on an unsigned affidavit." (emphasis original). R2-168-6. Contrary to the defendants' assertions, the district court specifically found that the FBI made efforts to pursue white officers as information about illegal activity surfaced. R2-168-8, 9, n.4 & 5. As the district court found, the targets

> ...were prompted by the FBI's undercover agents to include white police officers if they were so inclined/predisposed to criminal activity.... This subject of involving white officers was revisited on numerous occasions. During each discussion, the subject officer indicated that this was unlikely in that white officers and black officers did not associate with one another and did not trust each other sufficiently. R2-168-8, 9, n.4.

The district court cited in its order a litany of recorded conversations between undercover agents and targets where these efforts were attempted. R2-168-9,n.4.

25

The "presumption of regularity supports" prosecutorial decisions and "in the absence of clear evidence to the contrary, courts presume that [U.S. Attorneys] have properly discharged their official duties." United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

Of course, a prosecutor's discretion is "subject to constitutional constraints." United States v. Batchelder, 442 U.S. 114, 125 (1979). One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, Bolling v. Sharpe, 347 U.S. 497, 500 (1954), is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456 (1962).

In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear evidence to the contrary." Chemical Foundation, at 272 U.S. at 14-15. Courts are "properly hesitant to examine the decision whether to prosecute." Wayte v. United States, 470 U.S. 598, 608 (1985).

A selective prosection claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. The standard for such a claim "is a demanding one." United States v. Armstrong, 116 S. Ct. 1480, 1486 (1996).

## Coleman and Gorham Failed to Make the Requisite Showing

In order to prevail in a selective prosecution defense, a defendant must meet the heavy burden of (1) making a *prima facie* showing that he has been singled out for prosecution although other similarly situated persons who have committed the same acts have not been prosecuted; and (2) demonstrating that the government's selective prosecution was unconstitutional because actuated by impermissible motives such as racial or religious discrimination. United States v. Silien, 825 F.2d 320 (11th Cir. 1987); Owen v. Wainwright, 806 F.2d 1519, 1523 (11th Cir. 1986). To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted. Armstrong, 116 S. Ct. at 1487. In order to obtain an evidentiary hearing, the defendant must present facts "sufficient to create a reasonable doubt about the constitutionality of a prosecution...." United States v. Hayes, 589 F.2d 811, 819 (5th Cir. 1979). The vast majority of the courts of appeal require the defendant to produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not, and this requirement is consistent with equal protection case law. United States v. Parham, 16 F.3d 844, 846-847 (8th Cir. 1994); United States v. Fares, 978 F.2d 52, 59-60 (2nd Cir. 1992); United States v. Peete, 919 F.2d 1168, 1176 (6th Cir. 1990); C.E. Carlson, Inc. v. SEC, 859 F.2d 1429, 1437-1438 (10th Cir. 1988); United States v. Greenwood, 796 F.2d 49, 52-53 (4th Cir. 1986). The Supreme Court in Armstrong found that the claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effort

27

and that it was motivated by a discriminatory purpose." _Armstrong_, 116 S.Ct. at 1487; _Oyler_, 368 U.S. at 456.[3]

In the instant case, the defendants wholly failed to show that: 1) the government singled them out for prosecution due to a constitutionally impermissible reason; _and_ 2) that the government did not prosecute a similarly situated defendant who was of a different race. A showing that similarly situated offenders have not been prosecuted is an indispensable element of a selective prosecution claim. The defendants have not, and cannot, make such a showing. Therefore, the motion to dismiss was properly denied. Accordingly, there was no error.

**A. The district court did not err in denying Coleman's motion for an emergency stay. (Coleman's 17)**

After the district court denied the motion to dismiss, Coleman sought to stay the proceedings to appeal the denial of the motion to dismiss. The district court also denied the request to stay the proceedings and Coleman now appeals the denial of the stay.

Because Coleman has now, in this instant appeal, presented the issue of the district court's denial of the motion to dismiss, the issue of staying the proceedings is moot. Even so, the district court was correct in denying Coleman's motion for a stay. To succeed in obtaining a stay pending appeal, a petitioner must show: 1) a likelihood they will prevail on the merits; 2) irreparable

---

[3]In the instant case, the only evidence presented in support of the motion consisted of affidavits from attorneys in the case and an unsigned affidavit from a third party, none of which allege facts that meet the requirements delineated in _Armstrong_.

injury unless the stay is granted; 3) no substantial harm to other interested parties; and 4) no harm to the public interest. <u>In Re: Federal Grand Jury Proceedings</u>, 975 F.2d 1488, 1492 (11th Cir. 1992). Coleman did not show he could meet any of these requirements. The district court correctly denied the stay.

## V. **Coleman Was Not Entrapped** (Coleman's 15)

Coleman claims on appeal that he was entrapped. At trial, the court refused to give Coleman's requested instruction on entrapment. This Court reviews the district court's refusal to give a defendant's requested jury instruction for abuse of discretion. <u>United States v. Chirinos</u>, 112 F.3d 1089, 1101 (11th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 701 (1998), *citing* <u>United States v. Morales</u>, 978 F.2d 650, 652 (11th Cir. 1992).

It is well-settled that entrapment is an affirmative defense which requires the defendant to come forward with presentment of evidence before the issue is considered to be properly raised. <u>United States v. Gates</u>, 967 F.2d 497, 499 (11th Cir. 1992).

To raise entrapment, the defendant is required to admit that he committed the acts alleged. <u>United States v. Brooks</u>, 611 F.2d 614, 618 (5th Cir. 1980). Coleman did not do this.

The burden is on the defendant to produce evidence showing government involvement or inducement. <u>United States v. Parr</u>, 716 F.2d 796, 802 (11th Cir. 1983). To satisfy this burden, the defendant must demonstrate not merely inducement or suggestion on the part of the government, but "an element of persuasion or mild coercion." <u>United States v. Ventura</u>, 936 F.2d 1228, 1233 (11th Cir. 1991); <u>United States v. Andrews</u>, 765 F.2d 1491, 1499 (11th Cir. 1985).

29

In the recent case of <u>United States v. Quinn</u>, 123 F.3d 1415, 1423 (11th Cir. 1997), the Eleventh Circuit ruled that a district court had correctly refused to instruct on entrapment where no evidence was produced during the trial that the government persuaded or coerced the defendant to participate.

In the instant case, it is undisputed that Coleman was introduced to the government's cooperating witness for participation in the illegal scheme by another corrupt police officer, Thomas Bryant, Jr. R7-255-146,147; R8-256-460,461,465. A defendant cannot avail himself of an entrapment defense unless the initiator of his criminal activity is acting as an agent of the government. <u>United States v. Noll</u>, 600 F.2d 1123, 1129 (5th Cir. 1979); <u>United States v. Garcia</u>, 546 F.2d 613, 615 (5th Cir. 1977). In a case in which the Eleventh Circuit upheld a district court's refusal to give an entrapment instruction, <u>United States v. Mers</u>, 701 F.2d 1321, 1340 (11th Cir. 1983), the Court stated that while the defendant's "vicarious entrapment theory is ingenious, it is not the law." Such is the case here.

There was no error in the Court's refusal to give an entrapment instruction. There was no entrapment.

## VI. The Evidence was Sufficient to Sustain the Conviction (London's 1, Coleman's 23)

London and Coleman challenge the evidentiary sufficiency undergirding their convictions for conspiring to aid and abet the distribution of cocaine. "Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." <u>Iannelli v. United States</u>, 420 U.S. 770, 777 (1975). The agreement is the "essential evil at which the crime of conspiracy is

30

directed," and "agreement remains the essential element of the crime." Id. at 777 n.10. The elements of the offense of conspiracy under 21 U.S.C. § 846 are: (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means. United States v. Toler, 144 F.3d 1423, 1426 (11th Cir. 1998), citing United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir. 1990). It takes at least two to conspire, neither of whom may be government agents or informers. United States v. Noe, 821 F.2d 604 (11th Cir. 1987).

Because the crime of conspiracy is "predominantly mental in composition," United States v. Shabani, 513 U.S. 10, 16 (1994), it is frequently necessary to resort to circumstantial evidence to prove its elements. Glasser v. United States, 315 U.S. 60, 80 (1942)("Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a `development and collocation of circumstances.'"); United States v. Gold, 743 F.2d 800, 824 (11th Cir.1984)("`The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'") (quoting United States v. Ayala, 643 F.2d 244, 248 (5th Cir. Unit A 1981)). Consequently, the government need not demonstrate the existence of a "formal agreement," Gold, 743 F.2d at 824, but may instead demonstrate by circumstantial evidence "`a meeting of the minds to commit an unlawful act.'" United States v. Awan, 966 F.2d 1415, 1434 (11th Cir.1992)(quoting United States v. Parker, 839 F.2d 1473, 1478 (11th Cir.1988)). Although association alone is

31

insufficient to prove participation, proof of association with the conspirators is one factor that can be considered as evidence of a defendant's participation in a conspiracy. United States v. Knowles, 66 F.3d 1146, 1156 (11th Cir. 1995); United States v. Stanley, 24 F.3d 1314, 1320 (11th Cir. 1994).

The government's proof must be beyond reasonable doubt. This means that "when the sufficiency of the evidence to support any criminal conviction, including conspiracies, is challenged on appeal, the correct standard of review is substantial evidence ... viewed in the light most favorable to the government." Toler, 144 F.3d at 1426, citing United States v. Malatesta, 590 F.2d 1379, 1382 (5th Cir.1979).

In reviewing a conviction for sufficiency of the evidence, this Court has stated it will examine the evidence de novo in the light most favorable to the government, to determine whether a reasonable jury could have concluded beyond a reasonable doubt that the defendant was guilty of the crimes charged. United States v. Lopez-Ramirez, 68 F.3d 438, 440 (11th Cir.1995). A verdict of guilty must stand if there is substantial evidence to support it "unless no trier of fact could have found guilt beyond a reasonable doubt." Toler, 144 F.3d at 1428, citing United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir.1995).

Mere presence, guilty knowledge, sympathetic observation, and close association with a coconspirator are insufficient, without more, to support a conspiracy conviction. United States v. Brazel, 102 F.3d 1120, 1131 (11th Cir. 1997). Yet such factors may raise a permissible inference of participation in a conspiracy, which the jury may consider as a "material and probative factor...in reaching

32

its decision." <u>United States v. Hernandez</u>, 896 F.2d 513, 518 (11th Cir. 1990).

A defendant may be found guilty of conspiracy even if he played only a minor role in the scheme, since a conspirator need not know all the details of each act making up the conspiracy. <u>See</u> <u>United States v. Parrado</u>, 911 F.2d 1567, 1571 (11th Cir. 1990). Once the existence of the conspiracy is established, substantial evidence is necessary to connect a defendant to the conspiracy. <u>United States v. Clavis</u>, 977 F.2d 538 (11th Cir. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 998 (1993).

When, as here, a conspiracy conviction may be based on an aider and abettor theory of liability pursuant to 18 U.S.C. § 2, the evidence must show that the conspiracy occurred, and that "the defendant associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." <u>United States v. High</u>, 117 F.3d 464, 468 (11th Cir. 1997), <i>quoting</i> <u>United States v. Bryant</u>, 671 F.2d 450, 454 (11th Cir. 1982). A showing that the defendant "associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed" will support a conviction for aiding and abetting. <u>United</u> <u>States v. Delgado</u>, 56 F.3d 1357, 1367-68 (11th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 1049 (1996); <u>Bryant</u>, <u>id.</u>

Here, the evidence of the defendants' guilt was overwhelming. Fellow co-conspirator Damion Welcome testified against his codefendants at trial. R8-256-822. The cooperating witness, Walter Heyward, as well as several undercover FBI agents, provided testimony implicating the defendants. R8-256-450; R7-255-141.

33

Furthermore, the defendants made admissions concerning their involvement in the conspiracy. Coleman provided a written admission. R8-256-921-927; R9-259-975-980; R9-259-1005-1008. Finally, the audiotapes and videotapes provided substantial, unrefuted evidence of the defendants' own words and actions to carry out the illegal cocaine distribution scheme. Viewing the evidence in the light most favorable to the government, including all reasonable inferences and credibility judgments, see Glasser v. United States, 315 U.S. 60 (1942), this Court should readily conclude that a reasonable jury could have found that Coleman and London associated themselves with the conspiracy, and that by their actions, intended to bring about the successful completion of the crime.

In view of the above, the verdicts should be allowed to stand. There is no error.

**VII. Denial of Coleman's New Trial Motion was Proper (Coleman's 19)**

Coleman, citing absolutely no authority, moved the district court for a new trial claiming that the verdict was contrary to the evidence, was strongly against the weight of the evidence and was contrary to the law and principles of justice. The court denied the motion. This Court reviews the lower court's denial of a motion for new trial under the abuse of discretion standard. United States v. Tokars, 95 F.3d 1520, 1531 (11th Cir. 1996), cert. denied, 117 S. Ct. 1328 (1997). The Court need not construe the evidence in the light most favorable to the verdict. Tibbs v. Florida, 457 U.S. 31, 38 (1982). If the Court concludes that, despite the technical sufficiency of the evidence to sustain the verdicts, the evidence weighs so heavily against the guilty

34

verdicts that a serious miscarriage of justice may have occurred, the Court should grant a new trial.  _Id._

There are nevertheless limits to the Court's broad power to grant a new trial.  The evidence must "preponderate heavily against the verdict" before intervening to set aside the conviction. United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985). Even under this more flexible standard for the court (i.e., under Rule 33 as compared with Rule 29), no showing was made that a miscarriage of justice occurred and that the interests of justice require a new trial.  Coleman has not pointed to a cognizable defect or error in the proceedings, nor has he demonstrated how such was prejudicial.

Additionally, to have succeeded in such a motion, Coleman had to show that a new trial would have led to a different result, United States v. Champion, 813 F.2d 1154, 1171 (11th Cir. 1987), or that a substantial prejudicial error has caused a "miscarriage of justice."  Martinez, 763 F.2d at 1313.  The Eleventh Circuit has made it clear that courts should grant motions for new trial "sparingly and with caution, doing so only in those really `exceptional cases.'"  _Id._

Given the overwhelming evidence presented at trial, as outlined in the previous argument, there was clearly sufficient evidence for the jury to convict Coleman.  The district court did not abuse its discretion in denying Coleman's motion for a new trial.

## VIII. There Was No Error at Sentencing

A. **The district court did not clearly err in calculating the quantity of cocaine attributed to the defendants. (Gorham's 1, Coleman's 14)**

Coleman and Gorham assert error in the district court's determination of the drug quantity attributable to each at sentencing, arguing that they never personally handled cocaine, and that they were unaware of the quantities involved in each transaction for which they offered protective escort. This Court reviews for clear error a district court's determination as to quantity of drugs attributable to a defendant for purposes of sentencing under the guidelines. United States v. Calderon, 127 F.3d 1314, 1341 (11th Cir. 1997), cert. denied, 118 S. Ct. 1328 (1998); United States v. Frazier, 89 F.3d 1501, 1505 (11th Cir. 1996), cert. denied, 117 S. Ct. 1719 (1997). The government established the drug quantities Coleman and Gorham were involved in by a preponderance of the evidence. United States v. Mertilus, 111 F.3d 870, 872 (11th Cir. 1997). The district court considered both 1) reasonable foreseeability and 2) the scope of the jointly undertaken criminal activity each agreed to undertake; the district court's factual findings regarding attributions of drug quantity were not clearly erroneous.

In a drug conspiracy, a defendant may be held accountable not only for his own acts (USSG § 1B1.3(a)(1)(A)), but also for "`all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" United States v. Beasley, 2 F.3d 1551, 1561 (11th Cir. 1993), quoting USSG § 1B1.3(a)(1)(B). USSG § 1B1.3 requires a district court to

36

attribute to a defendant all drugs foreseeably distributed pursuant to a common scheme or plan of which that defendant's offense of conviction was a part. United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995).

Additionally, the Eighth Circuit has held, with regard to offenses involving controlled substances, that a defendant is held accountable for all quantities of contraband with which he was directly involved, without regard to the "reasonable foreseeability" requirement of § 1B1.3(a)(1)(B). United States v. Strange, 102 F.3d 356, 360 (8th Cir. 1996). There, two defendants aided, abetted, and willfully caused the conveyance of at least three packages of drugs (two containing approximately 5 pounds of marijuana each, and one containing 239.5 grams of cocaine) to two others. Both defendants denied knowledge that the third package contained cocaine, and argued that they should only be held accountable for the two packages of marijuana. The district court held them accountable for the cocaine (in addition to the marijuana), and the Eighth Circuit Court of Appeals affirmed the district court's attribution of the cocaine, holding that they were accountable for the full quantity of illegal drugs in all three parcels, without regard to "reasonable foreseeability." Strange, 102 F.3d at 361.

In determining the drug quantity accountable to a defendant at sentencing, the district court must make individualized findings concerning the scope of the criminal activity undertaken by the particular defendant. Lawrence, 47 F.3d at 1566; United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993). Such findings often begin with a review of the PSI. United States v. Agis-Meza, 99

37

F.3d 1052, 1054 (11th Cir. 1996). Once the parameters of a defendant's agreement to participate in the conspiracy are established, a district court can then determine the drug quantity reasonably foreseeable in connection with that defendant's level of participation in the conspiracy. Id. The evidence supporting the drug quantity is subject to the preponderance of the evidence standard. Agis-Meza, 99 F.3d at 1055; Frazier, 89 F.3d at 1506; Lawrence, 47 F.3d at 1566; Ismond, 993 F.2d at 1499. A defendant's sentence may be upheld if the record supports the amount of drugs attributed to him, including imputing others' unlawful acts to the defendant, even where a district court makes no particularized findings. Mertilus, 111 F.3d at 872; Beasley, 2 F.3d at 1561; Ismond, 993 F.2d at 1499. Consequently, a defendant's base offense level is determined by including "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." USSG § 1B1.3(a)(1)(A); Calderon, 127 F.3d at 1340-41.

### a. Coleman

In the PSI, the probation officer found that Coleman participated in six "scenarios" (i.e., offered protective escorts for six cocaine shipments, for which Coleman received $46,000 for both his participation and for the participation of Gorham, London, and two additional police officers) involving a total of 28.2 kilograms of cocaine hydrochloride. PSI ¶ 18; R12-16-17. During five of these "scenarios," (10-1-96, 10-31-96, 11-20-96, 12-10-96, and 1-6-97), 4.7 kilograms of real cocaine was used on each occasion. PSI ¶ 6, 7, 10, 11, 13; R12-15. On 1-30-97, fictitious

38

cocaine was used in the "scenario." PSI ¶ 16; R12-15.[4]  Because he was attributed with at least 15 but less than 50 kilograms of cocaine, Coleman's base offense level was established at level 34. PSI ¶ 26; R12-16.

FBI SA Steven Crum testified at sentencing regarding Coleman's involvement in the cocaine transactions.  SA Crum testified that on the very first occasion that the informant met with Coleman, he informed Coleman that the deals involved kilo quantities of cocaine.  R12-28.  Similarly, the first time undercover FBI SA Velazquez met Coleman (November 1996), he informed Coleman that he was dealing with large quantities of cocaine ("...I'm talking about bringing in,...40 to 50 kilos.") R12-28-29.  SA Crum testified that on one occasion, Coleman indicated to an officer he recruited,

---

[4]Coleman also participated in an additional "scenario" on March 12, 1997.  R12-17.  After the January 30, 1997 deal, Coleman continued to call the undercover agents demanding to participate in additional cocaine deals.  Id.  An additional deal was orchestrated where Coleman, working alone, and an undercover agent went to the Savannah airport to provide protective escort for a courier bringing cocaine into the airport on that date. Id.  Coleman went to the airport but was unable to locate the courier, as arranged by the FBI.  Id.  Coleman was nonetheless paid $2,000 for his participation on that date.  R12-17-18. Since no cocaine transaction occurred on this date, no drugs were attributed to Coleman at sentencing.  PSI ¶ 17.

39

Eugene Johnson, that they were bringing in cocaine "by the truckloads." R12-29.[5]

At sentencing, the district judge stated that he found the probation officer's drug attribution quantity "somewhat conservative." R12-23-24, 25. The district court adopted the facts and guidelines applications in the PSI, with the attached addendum, as its sentencing findings of facts. R12-25-26. Following Coleman's objections to the drug quantity attribution at sentencing, the district court stated that it had "carefully reviewed the findings of the probation officer," and found his attribution figure "reasonable" and "foreseeable," particularly in light of the "much larger quantities [that] were discussed." R12-56. The court further stated that it "readily accepted" the probation officer's drug quantity calculations. Id.

**b. Gorham**

In the PSI, the probation officer found that Gorham participated in two "scenarios" involving a total of 9.4 kilograms of cocaine (4.7 kilograms on 11-20-96, PSI ¶ 10, and 4.7 kilograms on 12-10-96, PSI ¶ 11), for which he should have received $6,500 from Coleman. PSI ¶ 18; R11-5-8, 11. This amount established his base offense level at 32 (at least five but less than 15 kilograms). PSI ¶ 23.

At sentencing, probation officer Ricky Long testified regarding Gorham's participation in the two cocaine transactions. R11-4 *et seq.* On November 20, 1996, Gorham, who had been recruited

---

[5]Tapes of these conversations were played by the government at trial.

40

by Coleman, participated in a scenario involving 4.7 kilograms of cocaine. R11-7. Gorham was to be paid $3,000 for his involvement, but indicated in a post-arrest statement that Coleman actually paid him $2,000. Id. Gorham participated in a second scenario on December 10, 1996, also involving 4.7 kilograms of cocaine. R11-7-8. Coleman was paid $10,500 for the officers' involvement in that transaction; Gorham again made a post-arrest statement that he was paid only $1,000 on this occasion. R11-11-12. However, testimony at trial established that "35" was the price Gorham agreed to. R7-255-242.

PO Long also testified about a November 18, 1996 meeting, prior to Gorham's involvement in the first actual transaction, in which the informant stated to Gorham, Coleman, and coconspirator London that they were transporting "keys" of cocaine into Savannah. R11-8-9, 13. Each escort involved multiple couriers. Additionally, Gorham was aware that a warehouse was used in the operation. R8-256-375. Furthermore, Coleman mentioned in the presence of Gorham and London that "truckloads" and "30, 40, 50 thousand dollars" worth of cocaine was involved. R8-256-541.

The district court considered Gorham's agreement to participate in the two transactions, and weighed the amount of cocaine that it found reasonably foreseeable, finding from the evidence at trial and from a "fairly extensive review of the record" that the calculations of the probation officer, his factual findings and guidelines applications, were "accurate" and "consistent with that of the Court." R11-18-19. Accordingly, the district court adopted the probation officer's factual findings and

guidelines applications in the PSI, with attached addendum. R11-19.

The district court's assessment of drug quantity attributable to a defendant for sentencing purposes is subject to reversal only if it is clearly erroneous. _Frazier_, 89 F.3d at 1506; _United States v. Hansley_, 54 F.3d 709, 714 (11th Cir. 1995); _Lawrence_, 47 F.3d at 1565. The district court adopted as its factual findings at sentencing the probation officer's recommendation regarding drug quantities; the record clearly supports these findings by a preponderance of the evidence, and the district court so found at sentencing.

Despite argument to the contrary, the fact that Coleman and Gorham provided security for cocaine shipments in connection with a government "sting" operation does not obviate their involvement in the transactions. _Cf._, _United States v. Schlei_, 122 F.3d 944, 995-96 (11th Cir. 1997)(fact that fraud occurred in connection with government sting operation does not affect the evidence of the defendant's intent to defraud others), _cert. denied_, 118 S. Ct. 1523 (1998).

There was no error, clear or otherwise, in the determination by the district court of the drug amounts to be assessed against Coleman or Gorham. The sentence imposed by the district court should be affirmed.

B.  Gorham would not have qualified for a two level decrease under the provisions of USSG § 2D1.1(b)(6).  (Gorham's 2)

Gorham argues that the provisions of USSG § 2D1.1(b)(6) should have applied to him at sentencing. However, Gorham never raised this issue before the district judge. A defendant bears the burden of establishing the appropriateness of a downward adjustment under

42

the guidelines by a preponderance of the evidence. United States v. Everett, 129 F.3d 1222, 1224 (11th Cir. 1997). As Gorham did not present any evidence at the time of sentencing to support his position, he did not meet the burden. Furthermore, even if the issue had been raised, Gorham would have been unable to demonstrate that he qualified for the downward adjustment. One of the key requirements of § 5C1.2(5) is that not later than the time of sentencing, the defendant must provide to the government all information he has concerning the offense. Gorham never did that. In fact, at sentencing the judge found Gorham's statements that he did not know he was protecting cocaine to be "totally unbelievable." R11-264-32, 33. As such, Gorham would not have qualified for the "safety valve" provision of § 2D1.1(b)(6). There was no error.

C.  **The Court did not err in denying downward departure on theory of sentence entrapment (London's 2)**

London argues that the district court erred in denying his request for downward departure based on sentencing manipulation. Citing _Koon v. United States_, 116 S.Ct. 2035 (1996), London argues that _Koon_ has implicitly overruled this Circuit's prohibition against sentencing entrapment.  Such is not the case.

This Circuit has repeatedly rejected the theory of sentencing entrapment or sentencing manipulation as a matter of law.  _United States v. Miller_, 71 F.3d 813, 818 (11th Cir. 1996); _United States v. Edenfield_, 995 F.2d 197, 200 (11th Cir. 1995)("we have expressly rejected the theory of sentence entrapment"), _United States v. Williams_, 954 F.2d 668, 672-73 (11th Cir. 1992)(no defense that "government manipulated the transaction in order to get the mandatory minimum sentence.")

Furthermore, a panel of this Court has once again squarely rejected a sentencing entrapment argument in a decision handed down after _Koon_, _United States v. Sanchez_, 138 F.3d 1410, 1414 (11th Cir.), _cert. denied_, 119 S. Ct. 414 (1998).

In that case, the Court again reiterated its position that this Circuit has rejected sentence entrapment as a viable defense. Furthermore, and more squarely on point, the Court looked at sentencing factor manipulation and found that "the fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing." _Sanchez_, 138 F.3d at 144.

IX.  London's Allegations of Ineffective Assistance of Counsel Are
Not Properly Before this Court.  (London's 3)

London asserts that he was ineffectively represented by
counsel at sentencing.  Generally, this Court does not consider
ineffective assistance claims on direct appeal, "because there
usually has been insufficient opportunity to develop the record
regarding the merits of these claims."  United States v. Camacho,
40 F.3d 349, 353 (11th Cir. 1994); United States v. Andrews, 953
F.2d 1312, 1327 (11th Cir. 1992).  An evidentiary hearing,
available in a 28 U.S.C. § 2255 proceeding, is often required for
development of an adequate record.  Holmes v. United States, 876
F.2d 1545, 1552 (11th Cir. 1989); United States v. Hilliard, 752
F.2d 578, 580 (11th Cir. 1985).

Because the record below in the instant case is insufficiently
developed to afford London a thorough review of his ineffective
assistance claims, this Court should not consider his claims here;
they are properly addressable via a motion under 28 U.S.C. § 2255
to vacate, set aside, or correct sentence.

Even if the Court were to consider this issue, trial counsel
was not ineffective.  ~~Coleman~~ London cannot demonstrate that he accepted
responsibility.

45

## CONCLUSION

For the above-stated reasons, the authorities stated herein, and the entire record, the judgments and sentences of the district court should be affirmed.

Respectfully submitted,

_____
HARRY D. DIXON, JR.
UNITED STATES ATTORNEY

_____
Carlton R. Bourne, Jr.
Assistant United States Attorney
SC Bar No. 007868

U. S. Attorney's Office
100 Bull Street, Suite 201
Savannah, GA 31401
(912) 652-4422

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 1999, I mailed a copy of the foregoing Brief of the Appellee to counsel of record for the appellants herein, by placing said copy in a post-paid envelope addressed as follows:

Joyce Griggs, Esq.
Counsel for Keith Coleman
2875 Highway 80
Savannah, Georgia 31408

William O. Cox, Esq.
Counsel for Frederick Gorham
123 East Liberty Street
Savannah, Georgia 31401

Randolph Frails, Esq.
Counsel for Keith London
505 Courthouse Lane
Augusta, Georgia 30901

Harry B. James, III, Esq.
Counsel for Keith London
407 6th Street
Augusta, Georgia 30901

HARRY D. DIXON, JR.
UNITED STATES ATTORNEY

Carlton R. Bourne, Jr.
Assistant United States Attorney
SC Bar No. 007868

U. S. Attorney's Office
100 Bull Street, Suite 201
Savannah, GA 31401
(912) 652-4422

1997R00520

**DO NOT PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------
No. 97-9368
------------------------

D. C. Docket No. 4:97-CR-181-02

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

OCT 13 1999

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK K. GORHAM

Defendant-Appellant.

------------------------
No. 98-8154
------------------------

D. C. Docket No. 4:97-CR-181-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDERICK K. GORHAM, KEITH LONDON, et al.,

Defendants-Appellants.



GOVERNMENT
EXHIBIT
C

--------------------------

Appeals from the United States District Court
for the Southern District of Georgia

--------------------------

(October 13, 1999)

Before ANDERSON, Chief Judge, TJOFLAT, Circuit Judge, and FAY, Senior
Circuit Judge.

PER CURIAM:

AFFIRMED.  <u>See</u> Eleventh Circuit Rule 36-1.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that one copy of the within and foregoing pleading was

mailed to:

> Frederick Gorham
> 09593-021
> Federal Medical Center
> Post Office Box 1600
> Butner, North Carolina 27509

This 18th day of June, 2001.

Carlton R. Bourne, Jr.
Assistant United States Attorney
South Carolina Bar No. 007868

100 Bull Street, Suite 201
Savannah, GA 31412
(912) 652-4422
(912) 652-4388 (fax)